| | |
|---|---|
| CRYSTAL LAWRENCE, | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | |
| v. | 2:19-cv-174-RJS-CMR |
| FIRST FINANCIAL INVESTMENT FUND V, LLC, | Chief District Judge Robert J. Shelby |
| Defendant. | Magistrate Judge Cecilia M. Romero |

Defendant First Financial Investment Fund V, LLC (First Financial) employs a simple business model: it buys defaulted debts previously owed to others; it pursues collection on those debts through law firms or collections agencies, who often obtain from Utah state courts default judgments on those debts; and it repeats the process. First Financial conducts its business without registering as a debt collector or posting a bond as Utah law requires for traditional collection agencies. Plaintiff Crystal Lawrence is one of many Utah residents against whom First Financial sought and obtained a default judgment on a delinquent debt. Lawrence contends First Financial's practice of suing on these debts without registering as a debt collector violates both Utah and federal law.

Several state and federal courts have addressed under various laws the underlying issue at the heart of this dispute, but this case presents a question of first impression under Utah law. Namely, does Section 12-1-1 of the Utah Collection Agency Act require registration as debt collectors by entities that regularly purchase debts originated by someone else, and then seek to collect those debts for their own account? The court concludes registration is required. Before the court are First Financial's Motion to Certify a Question of State Law to the Utah Supreme

Court[1] and Motion for Summary Judgment.[2]  For the reasons given below, the court DENIES both Motions.

## BACKGROUND

The factual record before the court is sparse and mostly undisputed.  After introducing the parties in this action, the court provides a brief overview of the debt buying industry.

### I.        First Financial and Lawrence

First Financial is in the business of purchasing and collecting on defaulted third-party debts.[3]  It has no employees and does not have any direct contact with obligors on the accounts it owns.[4]  Instead, First Financial outsources to collection agencies and law firms its collection efforts on debts it owns.[5]  First Financial both advertises its business of purchasing debts and actively solicits the purchase of debts for collection.[6]

After Lawrence defaulted on a debt she owed to a medical provider, First Financial acquired her account.[7]  In June 2018, the Gurstel Law Firm, acting as First Financial's legal representative, filed a debt collection action against Lawrence in Utah state court.[8]  As the real party in interest, the lawsuit listed First Financial as the plaintiff.[9]  First Financial was not

---

[1] Dkt. 22.

[2] Dkt. 16.

[3] Dkt. 36 (Joint Stipulation of Facts) ¶ 1.  The court refers to companies that use this or similar business models as "debt buyers" or "debt purchasers."

[4] Dkt. 16, Def.'s Mot. for Summ. J. (Def.'s MSJ) at 3 (citing Maloney Decl.).

[5] Id.

[6] Dkt. 36 (Joint Stipulation of Facts) ¶¶ 2–3.  Neither party has submitted evidence explaining the scope or geographical aim of First Financial's advertising and solicitation.

[7] See Dkt. 2, Ex. 2 (Compl.) ¶¶ 21–26.

[8] Id. ¶ 21; Dkt. 16 (Def.'s MSJ) at 4.

[9] Dkt. 16 (Def.'s MSJ) at 4.

registered as a collection agency when the action was filed.[10]   In September 2018, First

Financial obtained a $2,492.17 judgment against Lawrence.[11]  First Financial has filed many

similar actions in Utah state court to obtain judgments on defaulted debts.[12]

## II.     The Debt Buying Industry[13]

Debt collection often entails the following process.  First, a creditor determines a

consumer (the debtor) is delinquent on an account and that the consumer should be contacted

about the debt.[14]  If contacting the consumer by phone, letter, or other method is unsuccessful

(typically over a six-month to one-year period), the creditor will "charge off the account."[15]  At

this point, creditors often turn to collection agencies or collection law firms, who pursue both

non-judicial (more letters and phone calls) and judicial (lawsuits) remedies.[16]  If the debt

collector succeeds in collecting on the debt, it is paid a portion of the amount collected.[17]

---

[10] *See* Dkt. 2, Ex. 2 (Compl.) ¶ 21.

[11] *Id.* ¶ 25.

[12] Dkt. 18, Pl.'s Opp'n to Def.'s MSJ (Opp'n), Ex. B.  The parties dispute how many of these lawsuits First Financial has filed.  Lawrence asserts First Financial filed over 450 debt collection actions in the first four months of 2019 alone.  *See* Dkt. 18 (Opp'n) at 2.  First Financial counters that Lawrence's evidence points to only "several dozen" debt collection suits.  Dkt. 21, Def.'s Reply (Reply) at 3.  But at this stage of the proceeding, it is irrelevant how many debt collection actions First Financial has filed.  That is, Lawrence's claims do not depend on the number of actions First Financial has pursued.

[13] This section is based on two FTC Reports: *The Structure and Practices of the Debt Buying Industry*, Federal Trade Commission, January 2013, *available at* https://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf (last visited March 4, 2020) (2013 FTC Report); and *Collecting Consumer Debts – The Challenges of Change*, Federal Trade Commission, February 2009, *available at* https://www.ftc.gov/sites/default/files/documents/reports/collecting-consumer-debts-challenges-change-federal-trade-commission-workshop-report/dcwr.pdf (last visited March 4, 2020) (2009 FTC Report).  *See* Dkt. 18 (Opp'n) at 5 n.1.  This information is provided here merely as helpful context.

[14] 2009 FTC Report at 2.

[15] *Id.* at 2–3.  Charging off an account means the account is no longer listed as an account receivable on the creditor's books.  *Id.* at 3 n.11.

[16] *Id.* at 3.

[17] *Id.*

In the late 1980s, a new option became available to creditors holding charged off accounts. Rather than contract with debt collectors to collect on the debt, some creditors began selling consumer debts to debt buyers.[18] And the debts are not expensive: buyers pay on average around four cents per dollar of debt face value.[19] Fueled by consumers taking on increasing amounts of revolving debt in the 1990s and early 2000s, the number and type of debt buyers rapidly expanded.[20] The FTC now estimates there are hundreds, if not thousands, of entities that purchase debts for the purpose of attempting to collect on that debt for profit.[21]

With this brief background in mind, the court turns to the legal question before it.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[23] A fact is material if, under the governing substantive law, it could "affect the outcome of the suit."[24] When applying this standard, the court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[25]

---

[18] 2013 FTC Report at 12.

[19] *Id.* at ii.

[20] *Id.* at 12–14.

[21] *Id.* at 14.

[22] Fed. R. Civ. P. 56(a).

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[24] *Id.*; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material.").

[25] *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

**ANALYSIS**

Lawrence brings two causes of action, both related to First Financial's business of purchasing and collecting defaulted third-party debts. First, Lawrence claims First Financial violated the Fair Debt Collection Practices Act (FDCPA) by pursuing debt collection in Utah state courts without first registering as a debt collector.[26] Second, Lawrence claims First Financial's failure to register before suing on debts violates the Utah Consumer Sales Practices Act.[27] Both claims depend on Lawrence's assertion that First Financial is a debt collector under Section 12-1-1 (the Registration Statute or Statute) of the Utah Collection Agency Act (UCAA).[28] If First Financial is not a debt collector, it is not required to register or pay a bond before suing to collect on debts it owns. Before turning to that issue, the court first resolves First Financial's invitation to certify to the Utah Supreme Court the central question here presented.

## I. The Court Will Not Certify First Financial's Proposed Question

First Financial moves to certify this question to the Utah Supreme Court: "Does the registration and bond requirement set forth in Utah Code § 12-1-1 apply to an owner of debt that hires registered or exempted third parties to conduct all debt collection activities on behalf of the debt owner?"

Federal courts may certify questions to the Utah Supreme Court under Utah Appellate Rule of Procedure 41 where "the state of the law of Utah applicable to a proceeding before the certifying court is uncertain."[29] Certification can be helpful where the question at issue "(1) may be determinative of the case at hand and (2) is sufficiently novel that [the certifying court] feel[s]

---

[26] *See* 15 U.S.C. § 1692(e)–(f).

[27] Utah Code Ann. § 13-11-1.

[28] The court uses the phrase "debt collector" to refer to "collection agency," "collection bureau," and "collection office," as used in Section 12-1-1. *See* Utah Code Ann. § 12-1-1.

[29] Utah R. App. P. 41.

uncomfortable attempting to decide it without further guidance."[30]  But while courts may choose to certify questions involving "unsettled" areas of state law,[31] "certification is not to be routinely invoked" simply because a federal court faces an issue of first impression.[32]  If a "reasonably clear and principled course" is available, courts should exercise "judgment and restraint" before certifying questions.[33]  Federal district courts enjoy wide latitude in deciding certification motions.[34]

First Financial correctly contends that resolution of the question concerning the Registration Statute's applicability to debt buyers likely will be determinative of the case.  But while the issue at the heart of this case presents a previously unanswered question of Utah law, it is not so novel or complex that the court is incapable of interpreting the Statute without first consulting the Utah Supreme Court.  Indeed, while no court has yet determined whether the Statute applies to debt buying businesses like First Financial, several courts have considered the general question as it applies under other, substantially similar state laws (as well as under federal law).[35]  Moreover, as explained below, the court has identified a reasonably clear and principled course to follow in answering the relevant question.  Certification of First Financial's proposed question is unnecessary.

---

[30] *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).

[31] *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990).

[32] *See Copier v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998) (quoting *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988)).

[33] *Pino*, 507 F.3d at 1236 (citation omitted).

[34] *See Allstate*, 920 F.2d at 667 ("The decision to certify rests in the sound discretion of the federal district court.").

[35] *See, e.g.*, *LVNV Funding LLC v. Finch*, 463 Md. 586 (2019); *Gray v. Suttell & Assocs.*, 181 Wash. 2d 329 (2014); *Purco Fleet Servs. v. Idaho State Dept. of Fin.*, 140 Idaho 121 (2004); *Barbato v. Greystone All., LLC*, 916 F.3d 260 (3d Cir. 2019).

## II. The Utah Collection Agency Act Applies to Debt Buyers

This case turns on whether the Registration Statute covers entities whose primary purpose is the purchase and collection of defaulted debts originally owed to others.  The Statute provides:

> No person shall conduct a collection agency, collection bureau, or collection office in this state, or engage in this state in the business of soliciting the right to collect or receive payment for another of any account, bill, or other indebtedness, or advertise for or solicit in print the right to collect or receive payment for another of any account, bill, or other indebtedness, unless at the time of conducting the collection agency, collection bureau, collection office, or collection business, or of advertising or soliciting, that person or the person for whom he may be acting as agent, is registered with the Division of Corporations and Commercial Code and has on file a good and sufficient bond as hereinafter specified.[36]

In other words, the Registration Statute requires both registration with the Division of Corporations and Commercial code and payment of a bond if a person undertakes the following in Utah: (1) conducts a collection agency, collection bureau, or collection office; (2) engages in soliciting the right to collect or receive payment for another of any account, bill, or other indebtedness; or (3) advertises for the right to collect or receive payment for another of any account, bill, or other indebtedness.  First Financial is required to register and post a bond only if its business activities encompass one of these three categories.

When interpreting state statutes, federal courts apply the relevant state's rules of statutory interpretation.[37]  Utah's rules apply here.  Faced with questions of statutory interpretation, Utah courts seek "to evince the true intent and purpose of the legislature."[38]  This intent is best evidenced by the words of the statute itself: "[t]he first step of statutory interpretation is to look

---

[36] Utah Code Ann. § 12-1-1.

[37] *See Ward v. Utah*, 398 F.3d 1239, 1248 (10th Cir. 2005).

[38] *Bryner v. Cardon Outreach, LLC*, 2018 UT 52, ¶ 9, 428 P.3d 1096.

to the plain language."[39]  This includes reading the statute "as a whole, . . . interpret[ing] its provisions in harmony with other statutes in the same chapter and related chapters."[40]  If the statutory language is plain and unambiguous, the court "will not look beyond the same to divine legislative intent."[41]

Although Lawrence initially asserts First Financial's business falls within all three categories of conduct the Registration Statue covers,[42] her argument focuses almost exclusively on the first category—whether First Financial is a collection agency, collection bureau, or collection office.[43]  And for good reason.  The second and third categories within the Registration Statue unambiguously apply only where a person solicits or advertises the right to collect payment *for another*.  But, as Lawrence concedes, First Financial does not practice the "classic model" of debt collection by pursuing debts owed to third parties.[44]  Instead, First Financial pursues only previously defaulted debts that it has purchased and therefore owns.[45]  Any solicitation or advertising First Financial engages in is thus to *buy* others' outstanding receivables—not to collect debts owed to others in exchange for a percentage of the recovery. Because First Financial does not solicit or advertise for the right to collect payment for others, its conduct does not fall within the Registration Statute's second or third categories.

For the Registration Statute to reach First Financial, then, First Financial must conduct "a collection agency, collection bureau, or collection office."  The Registration Statute defines none

---

[39] *Id.*

[40] *Id.* (internal quotations marks and citation omitted).

[41] *Id.* (quoting *Garrard v. Gateway Fin. Servs., Inc.*, 2009 UT 22, ¶ 11, 207 P.3d 1227).

[42] Dkt. 18 (Opp'n) at 4.

[43] *See generally id.*

[44] *Id.* at 2.

[45] *See* Dkt. 16, Ex. 1 (Maloney Decl.) ¶¶ 3, 5.

of these terms.  To determine what these terms mean, the parties submit in their briefs arguments concerning (1) ordinary meaning (*i.e.*, dictionary definitions), (2) common canons of statutory interpretation, and (3) decisions from state supreme courts that have confronted essentially the same question presented here.  The court assesses each in turn.

## A.  Ordinary Meaning

"If the legislature has not defined a term, [the court] must look to other sources 'to derive its meaning—to either the ordinary meaning of the word, or to its technical sense as a legal term of art.'"[46]  Where the term is not a term of art, courts may consult dictionaries to assess ordinary meaning.[47]  None of the disputed terms are terms of art, so the court must turn to other sources, primarily dictionaries, to derive the relevant terms' meanings.[48]

## 1.  Collection Agency

The parties submitted competing dictionary definitions of "collection agency."  First Financial cites three definitions.  First, Cambridge Dictionary defines a collection agency as "a business that collects money that is owed to other companies for them."[49]  Second, Ballentine's Law Dictionary defines a collection agency as "[a] person or firm engaged in the business of collecting or receiving for payment claims of all kinds on behalf of others."[50]  Third, Dictionary.com defines a collection agency as "a firm that collects unpaid bills for other firms

---

[46] *GeoMetWatch Corp. v. Utah State Univ. Research Found.*, 2018 UT 50, ¶ 15, 428 P.3d 1064 (quoting *State v. Bagnes*, 2014 UT 4, ¶ 13, 322 P.3d 719).

[47] *Id.* ¶¶ 20–21.

[48] After providing three definitions of "collection agency," First Financial cites to a single case for the proposition that "Utah Courts have used the term 'collection agency' consistent with" the meaning First Financial advances. Dkt. 16 (Def.'s MSJ) at 7 (citing *Long v. Ethics & Discipline Comm.*, 2011 UT 32, ¶ 9, 256 P.3d 206).  But that case makes only a passing reference to a collection agency without discussing how to define the term, and it never suggests "collection agency" is a term of art.

[49] *Id.* at 6.

[50] *Id.* at 6–7.

and is usually compensated by receiving a percentage of the amount collected."[51]  Each of these definitions connotes a principal-agent relationship whereby the agent collects debts on behalf of the principal.  In contrast, Lawrence cites a single definition of "collection agency" from TheLawDictionary.org as a "[f]irm specializing in getting (1) commitments from delinquent customers to pay; (2) recovering, in part or in full, delinquent amounts due; or (3) initiating court action to force delinquent recovery."[52]  Weighing these respective definitions, the court agrees with First Financial that the term "collection agency" is narrower than Lawrence suggests and entails a principal-agent relationship.  The court thus defines "collection agency" as "a person engaged in the business of collecting or receiving for payment claims of all kinds on behalf of others."

## 2.  Collection Bureau and Collection Office

Although First Financial advances several definitions of "collection agency," it fails to propose any definitions of the terms "collection bureau" or "collection office."  This oversight is puzzling because the Registration Statute gives no indication that "collection agency" is of greater importance than the other listed terms.  Because dictionaries do not commonly define those other phrases, First Financial resorts to the statutory construction canons *noscitur a socii* and *ejusdem generis* to conclude "the general words 'collection office' and 'collection bureau' are limited by the meaning of the well-defined, more-specific word 'collection agency.'"[53]  But aside from First Financial's misapplication of those canons (discussed below), courts review

---

[51] *Id.* at 7.

[52] Lawrence represented the definition was taken from Black's Law Dictionary, Dkt. 18 (Opp'n) at 7–8, but this appears to be inaccurate.  The definition's source—TheLawDictionary.org—is a combination of Black's Law Dictionary 2nd Edition and "professionally written legal definitions."  Dkt. 21 (Reply) at 11.  Because Black's Law Dictionary 2nd Edition does not define "collection agency," *id.*, Ex. A, the definition Lawrence cites was presumably written by an affiliate of TheLawDictionary.org.

[53] Dkt. 16 (Def.'s MSJ) at 8.

dictionaries to ascertain words' ordinary meaning *before* turning to statutory canons.[54]
Moreover, as explained more fully below, courts applying Utah law presume that the legislature
drafts statutes so that each provision has independent meaning and is not merely surplusage.[55]
Considering this principle, the court defines both "collection bureau" and "collection office."

Merriam-Webster defines "collection" as "the act or process of collecting."[56]  To collect
means "to bring together into one body or place" or "to gather or exact from a number of persons
or sources."[57]  Here, the Registration Statute leaves no doubt as to the object of the collection:
"any account, bill, or other indebtedness."

"Bureau" means "a usually commercial agency that serves as an intermediary especially
for exchanging information or coordinating activities."[58]  As "agency" is incorporated within the
definition of "bureau," it appears "collection bureau" carries a meaning at least related to
"collection agency."

But the term "collection office" contemplates something broader.  Merriam-Webster
defines "office" as "a place where a particular kind of business is transacted or a service is
supplied."[59]  Combined with "collection," the phrase "collection office" suggests a business, the
principal purpose of which is the collection of any account, bill, or other indebtedness.  This
construction is consistent with the common understanding of similar compound terms.  For

---

[54] *See GeoMetWatch*, 2018 UT 50, ¶ 21.

[55] *See Lancer Ins. Co. v. Lake Shore Motor Coach Lines, Inc.*, 2017 UT 8, ¶ 13, 391 P.3d 218.

[56] *Collection*, Merriam-Webster Online Dictionary (*available at* https://www.merriam-webster.com/dictionary/collection) (last visited March 4, 2020).

[57] *Collect*, Merriam-Webster Online Dictionary (*available at* https://www.merriam-webster.com/dictionary/collect) (last visited March 4, 2020).

[58] *Bureau*, Merriam-Webster Online Dictionary (available at https://www.merriam-webster.com/dictionary/bureau) (last visited March 4, 2020).

[59] *Office*, Merriam-Webster Online Dictionary (available at https://www.merriam-webster.com/dictionary/office) (last visited March 4, 2020).

example, a "doctors' office" is a business the principal purpose of which is treating patients, and a "law office" is a business the principal purpose of which is providing legal services to clients.[60] Thus, unlike "collection agency" and "collection bureau," "collection office" encompasses businesses that collect on debts for others or for themselves (or both).[61]

Considering the ordinary meaning of the terms "collection agency," "collection bureau," and "collection office" just described, it is clear First Financial's business activities do not fall within the definition of either of the first two terms. It is equally clear, however, First Financial's activities fit squarely within the definition of "collection office." Indeed, the purchasing and collection of debt is First Financial's *raison d'être*. Although "collection agency" and "collection bureau" both imply a principal-agent relationship, "collection office" is not so limited. That First Financial collects debts for its own account does not obviously place it

---

[60] Another tool the Utah Supreme Court employs in assessing the ordinary meaning of a word or phrase is corpus linguistics. "Corpus linguistics is an empirical approach to the study of language in which we search large, electronic databases of naturally occurring language. From these searches, we can draw inferences about the ordinary meaning of language based on real-world examples." *Richards v. Cox*, 2019 UT 57, ¶ 20, 450 P.3d 1074 (citation omitted). However, the court's first, brief foray into corpus linguistics did not reveal a different meaning of "collection office" than the definition above. Searching the Corpus of Historical American English, the phrase "collection office" did not return any results from the 1950s (the Registration Statute was enacted in 1953). And the one result the court found from 1985 referred to a "tax" collection office. This supports the court's conclusion that "collection office" did not have a special meaning in 1953—at least not in the context of debt collection. Accordingly, the dictionary definitions of those terms provide the best information concerning their meaning.

[61] In addition to dictionary definitions, the court finds instructive language from the Utah Division of Corporations and Commercial Code's website page dedicated to information about collection agencies. While by no means dispositive, state supreme courts have found value in considering how the state organ responsible for regulating debt collectors interprets the relevant collection statute. *See LVNV Funding LLC v. Finch*, 463 Md. 586, 597 (2019) (noting the Maryland State Collection Agency Licensing Board had taken the "consistent position that a Consumer Debt Purchaser that collects consumer claims though civil litigation is a collection agency under Maryland law and required to be licensed as such") (internal quotation marks and citation omitted); *Gray v. Suttell & Assocs.*, 181 Wash. 2d 329, 338 n.7 (2014) (basing in part its finding that Washington's debt collection statute is ambiguous because the Washington Collection Agency Board "struggled to determine whether debt buyers fell within the scope of the definition"). Immediately before reciting the Registration Statute, the site states, "[a] Collection Agency is a business that pursues payments on debts owed by individuals or businesses." *See Collection Agency*, Utah Department of Commerce, Division of Corporations and Commercial Code, available at https://corporations.utah.gov/business/ca.html (last visited March 4, 2020). Because "Collection Agency" is capitalized, this term appears to refer to all three of the key terms in the Statute ("collection agency," "collection bureau," and "collection office") rather than a particular definition of "collection agency." Notably, the Utah Division's description of "Collection Agency" contains no "for another" limitation and is exceptionally broad—broader than any of the three terms just defined by the court.

outside the Registration Statute's reach.  To the contrary, the court's preliminary interpretation of the relevant undefined terms suggests First Financial is a collection office and is thus bound by the Statute's registration and bonding requirements.

## B.  Canons of Statutory Interpretation

Common canons of statutory interpretation further support the court's interpretation of "collection office."  After considering the whole text canon, the court discusses other applicable canons, including *ejusdem generis*, *noscitur a sociis*, the canon of independent meaning (the presumption against surplusage), and the substantive terms canon.

### 1.  The Whole Text Canon

A broader definition of "collection office" comports with the Registration Statute's full text and the UCAA as a whole.  "The whole-text canon calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."[62]  This canon provides that statutory text ambiguous in isolation may be clarified "in light of its linguistic, structural, and statutory context."[63]  Both parties invoke other sections within Title 12 to support their interpretations of "collection agency," "collection bureau," and "collection office."  But they fail to consider two important indicators within the Registration Statute itself.  Before looking to other sections within the UCAA, the court first considers the full text of the Statute.

---

[62] *Bryner*, 2018 UT 52, ¶ 12 (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012)).

[63] *Id.* (quoting *State v. Rushton*, 2017 UT 21, ¶ 11, 395 P.3d 92).

So far, the court's focus has been on the first half of the Registration Statute, which specifies the conduct that requires registration:

> No person shall [1] conduct a collection agency, collection bureau, or collection office in this state, or [2] engage in this state in the business of soliciting the right to collect or receive payment for another of any account, bill, or other indebtedness, or [3] advertise for or solicit in print the right to collect or receive payment for another of any account, bill, or other indebtedness . . .

But two phrases in the Statute's second half, emphasized below, are also instructive:

> . . . unless at the time of conducting the collection agency, collection bureau, collection office, or *collection business*, or of advertising or soliciting, *that person or the person for whom he may be acting as agent*, is registered with the Division of Corporations and Commercial Code and has on file a good and sufficient bond as hereinafter specified.

First, there is the curious inclusion of the term "collection business" in the second half of the Statute. There appear to be two possible reasons for the inclusion of "collection business" in this half of the Statute. The term could be included as shorthand for the second category of conduct that requires registration—*i.e.*, it stands in for the clause, "engage in this state in the business of soliciting the right to collect or receive payment for another of any account, bill, or other indebtedness." But if that interpretation were correct, the legislature likely would have placed another "or" between "collection bureau" and "collection office," as it did in the first half of the Statute. Thus, the Statute would have read: "unless at the time of conducting the collection agency, collection bureau, *or* collection office, or collection business, or of advertising or soliciting . . . ."

Instead, the placement of "or" between "collection office" and "collection business" suggests "collection business" is part of the same list. In other words, the legislature added "collection business" in the second half of the Registration Statute in a further attempt to clarify

the Statute broadly reached debt collection activities of various kinds, notwithstanding the label attached to the conduct. This also supports a broader definition of "collection office."

Second, another clause in the second half of the Registration Statute confirms the legislature did not mean to confine the Statute's reach only to debt collectors who worked on behalf of others. The Statute states that no person may engage in debt collection "unless . . . *that person or the person for whom he may be acting as agent*" is registered and bonded. The first "person" identified here is the same person the Statute opens with—the person conducting the debt collection activity. The second "person"—"the person for whom he may be acting as agent"—refers to a possible principal. But the inclusion of the word "may" indicates the legislature also contemplated a scenario in which no principal-agent relationship existed. Otherwise, the language would read, "that person or the person for whom he *is* acting as agent." This again confirms that the proper interpretation of "collection office" ought not be limited by the notion of an inherent principal-agent relationship, as exists in the context of a "collection agency."

Having considered all the relevant language within the Registration Statute, the court turns to other sections of the UCAA. Lawrence argues Section 12-1-11 is evidence the legislature took a "broad approach" toward regulating debt collectors.[64] Section 12-1-11 sets parameters for when a creditor may require a debtor to pay a collection fee in addition to the amount already owed to the creditor. That provision defines "Third party debt collection agency" as "a debt collector as defined in 15 U.S.C. Sec. 1692a."[65] Under Section 1692a, a debt collector means "any person . . . in any business the principal purpose of which is the collection

---

[64] Dkt. 18 (Opp'n) at 6.

[65] Utah Code Ann. § 12-1-11(1)(d)(i).

of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[66]  Citing the Seventh Circuit's decision in *Ruth v. Triumph Partnerships*,[67] Lawrence asserts "[c]ourts have routinely interpreted the FDCPA to govern 'debt buyers' like First Financial."[68]  First Financial responds it is not a "debt collector" under the FDCPA and, even if it were, the Utah Legislature chose not to incorporate the federal definition into Section 12-1-1.[69]

Although Lawrence is likely correct First Financial would qualify as a "debt collector" under the FDCPA,[70] the court need not reach that issue.  Lawrence admits the UCAA's incorporation of the FDCPA's "debt collector" definition is limited to Section 12-1-11.[71]  And First Financial persuasively argues that if the legislature intended to incorporate the federal definition of "debt collector" into Section 12-1-1, it would have done so.[72]  But First Financial does not argue—nor could it—that a broader definition of "collection office" in Section 12-1-1 creates any conflict with Section 12-1-11.  The latter simply establishes when creditors may impose additional fees where they contract with a debt collector or law firm and has little bearing on the court's interpretation of Section 12-1-1.

---

[66] 15 U.S.C. § 1692a(6).

[67] 577 F.3d 790 (7th Cir. 2009)

[68] Dkt. 18 (Opp'n) at 6.

[69] Dkt. 21 (Reply) at 9–10.

[70] *See, e.g.*, *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 261 (3d Cir. 2019) ("This appeal concerns . . . the first definition [of Section 1692a] and requires us to determine whether an entity that acquires debt for the 'purpose of . . . collection' but outsources the actual collection activity qualifies as a 'debt collector.'  The District Court held that it does, and we agree: an entity that otherwise meets the 'principal purpose' definition cannot avoid the dictates of the FDCPA merely by hiring a third party to do its collecting.") (quoting 15 U.S.C. § 1692a(6)).

[71] Dkt. 18 (Opp'n) at 6.

[72] *See* Dkt. 21 (Reply) at 9–10 (citing *State v. Hobbs*, 2003 UT App 27, ¶ 21, 64 P.3d 1218).

On the other hand, First Financial argues Section 12-1-2 supports narrowly defining the terms in the Registration Statute. That section establishes the conditions of the bond: "[t]he bond shall provide that the person giving it shall, upon written demand, remit the collection proceeds to or for the person for whom any account, bill, or other indebtedness is taken for collection in accordance with the collection agreement."[73] The bond thus serves to protect creditors from collection agencies who might otherwise fail to remit the debts they collect. Therefore, First Financial asserts, interpreting "collection agency" to include entities who collect on their own debts would result in those companies being forced to post a bond guaranteeing remittance of collection proceeds to itself.[74] But while the court agrees with First Financial that Section 12-1-2 seems to be aimed at debt collectors who act for others, the court's definition of "collection office" does not somehow render Section 12-1-2 inoperable nor make it irreconcilable with the Registration Statute. On balance, considering the ordinary meaning of "collection office" and all the relevant canons of statutory construction discussed below, the court concludes a definition of "collection office" that encompasses debt buyers best comports with the statutory scheme as a whole and the Registration Statute's intended meaning.

## 2. Other Relevant Canons of Statutory Interpretation

Other canons of interpretation also support the court's interpretation of "collection office." But the court begins with First Financial's argument that, under the doctrines of *noscitur a sociis* and *ejusdem generis*, "collection office" and "collection bureau" are limited by the "well-defined, more specific" term "collection agency."[75] That is, since "collection agency" connotes that the collection activity is undertaken for another, First Financial asserts the terms

---

[73] Utah Code Ann. § 12-1-2(2).

[74] Dkt. 16 (Def.'s MSJ) at 10.

[75] *Id.* at 8.

"collection bureau" and "collection office" necessarily exclude entities who collect on debts for their own account.[76]  First Financial's contention is flawed for several reasons.

First, the *ejusdem generis* canon is wholly inapplicable here.  *Ejusdem generis* instructs that "*general catchall terms* appearing at the . . . end of an exemplary statutory list are understood to be informed by the content of the terms of the list."[77]  This canon prevents a broad general term at the end of an enumerated list from rendering that list superfluous.[78]  For example, in *GeoMetWatch*, the defendants argued they were covered under Utah's Governmental Immunity Act as a "government entity," which included "the state and its political subdivision."[79]  The statute defined the "state" as "the state of Utah, and includes each office, department, division, agency, authority, commission, board, institution, hospital, college, university, Children's Justice Center, *or other instrumentality of the state*."[80]  The Utah Supreme Court invoked *ejusdem generis* to restrict the meaning of the catchall phrase "or other instrumentality of the state."[81]  But the Registration Statute contains neither an "exemplary statutory list" nor a catchall.  Instead, the legislature identified three distinct entities it sought to regulate: collection agencies, collection bureaus, and collection offices.[82]  There is no support for

---

[76] *See id.*

[77] *GeoMetWatch*, 2018 UT 50, ¶ 26 (quoting *State v. Bagnes*, 2014 UT 4, ¶ 18, 322 P.3d 719) (emphasis added).

[78] *See id.* ("[T]o give meaning to a general term, the general term is understood as restricted to include things of the same kind, class, character, or nature as those specifically enumerated, unless there is something to show a contrary intent.") (internal quotation marks and citation omitted).

[79] *Id.* ¶ 13.

[80] *Id.*

[81] *Id.* ¶¶ 26–27.

[82] *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008) (rejecting application of *ejusdem generis* where the statutory language was disjunctive and "not . . . a list of specific items separated by commas and followed by a general or collective term.").

First Financial's assertion that "collection bureau" and "collection office" are limited by "collection agency."

Second, the court's interpretation of "collection office" is consistent with the canon *noscitur a sociis*. At its most basic, *noscitur a sociis* means "[w]ords grouped in a list should be given related meaning."[83] This canon would thus preclude application of the Registration Statute to a charitable organization, even though a well-accepted definition of "collection" is "a sum of money collected, esp[ecially] for charity or church use."[84] But it can hardly be argued that the court's definitions of "collection agency," "collection bureau," and "collection office" are not related in meaning. First Financial contends *noscitur a sociis* also means that "[w]hen two or more words are grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the special word."[85] But courts have routinely rejected the idea that a broad statutory term must always be limited simply because of its proximity to a more narrow term.[86] That "collection office" is broad enough to encompass entities that collect debt for their own account does not make it different in kind than "collection agency" or "collection bureau." At bottom, each term includes entities whose business is collecting on debts and is consistent with *noscitur a sociis*.

On the other hand, First Financial's proposed interpretation of "collection bureau" and "collection office" runs afoul of the surplusage canon. That canon "presumes that each provision

---

[83] *Fire Ins. Exchange v. Oltmanns*, 2018 UT 10, ¶ 11, 416 P.3d 1148 (internal quotation marks and citation omitted).

[84] *Collection*, Random House College Dictionary 264 (1980).

[85] Dkt. 16 (Def.'s MSJ) at 7 (quoting *Hansen v. Wilkinson*, 658 P.2d 1216, 1217 (Utah 1983)).

[86] *See S.D. Warren Co. v. Maine Bd. of Envtl. Prot.*, 547 U.S. 370, 379 (2006) (rejecting petitioner's argument under *noscitur a sociis* "that pairing a broad statutory term with a narrow one shrinks the broad one"); *see also Thayer v. Washington Cty. Sch. Dist.*, 2012 UT 31, ¶ 37, 285 P.3d 1142 (Lee, J., dissenting) (noting that "a term of broad application should *not* be narrowed by its neighboring text when its broad meaning is clear").

of a statute has meaning independent of all others."[87]  That is, legislatures do not adopt words

that "say[] nothing not already stated elsewhere."[88]  First Financial's interpretation of "collection

bureau" and "collection office" renders those terms a nullity—effectively synonyms of

"collection agency"—a result courts disfavor.  In contrast, the court's definition of "collection

office" gives independent meaning to an otherwise redundant term.

Nor will the court accept First Financial's invitation to write additional words into the

Registration Statute.  Under the substantive terms canon, courts presume that "the legislature

used each word advisedly."[89]  In other words, courts "will not infer substantive terms into the

text that are not already there" or "rewrite the statute to conform to an intention not expressed."[90]

But that is exactly what First Financial asks of the court here.  Noting that the second and third

categories of activity the Registration Statute regulates include the limiting "for another"

language, First Financial concludes, "[a]s such, the [Registration] Statute requires registration

and a bond from persons who collect debts *for others*, solicit the collection of debts for others, or

advertise in print the right to collect debts for others."[91]  But the first category states only that no

person shall conduct a collection agency, collection bureau, or collection office without

registering and posting a bond; it does not confine the requirement to those who conduct debt

collection "for others."

---

[87] *Lancer Ins. Co.*, 2017 UT 8, ¶ 13.

[88] *Id.*

[89] *Bryner*, 2018 UT 52, ¶ 20 (quoting *Associated Gen. Contractors v. Bd. of Oil, Gas & Mining*, 2001 UT 112, ¶ 30, 38 P.3d 291).

[90] *Id.* ¶ 21 (quoting *Arredondo v. Avis Rent A Car Sys., Inc.*, 2001 UT 29, ¶ 12, 24 P.3d 928).

[91] Dkt. 16 (Def.'s MSJ) at 8–9 (emphasis added).

### 3. Synthesis

Few statutes are subject to a single interpretation, and the Registration Statute does not fall within that rare class. But while there is room for disagreement about the contours of the Statute's meaning, both a close reading of the Statute and the canons of statutory construction support the court's interpretation of "collection office." And under this interpretation, the Registration Statute encompasses First Financial. This is not a surprising result under a statute enacted to regulate debt collectors. First Financial buys debt and seeks to collect on that debt for profit. The court concludes First Financial's business of buying debt originated by someone else and then collecting on that debt brings it within the Statute's ambit.

### C. Relevant State Supreme Court Decisions

Similar questions notwithstanding, the decisions of state supreme courts outside Utah interpreting different language under other laws have little bearing on the question before this court. Lawrence nevertheless cites two decisions from the Washington and Maryland supreme courts as support for her position that First Financial is covered by the Registration Statute.[92] As an initial matter, in both cases the courts interpreted whether the defendant debt buying companies fit within the relevant state statute's definition of "collection agency." In contrast, here, the Registration Statute provides no definition of "collection agency," "collection bureau," or "collection office." This court's task requires more than simply determining whether First Financial fits into the legislature's pre-prescribed definition.

In *Finch*, the Maryland Supreme Court held that LVNV—a debt purchaser—was required to obtain a license before doing business as a collection agency.[93] But while the court

---

[92] *See LVNV Funding LLC v. Finch*, 463 Md. 586 (2019); *Gray v. Suttell & Assocs.*, 181 Wash. 2d 329 (2014).

[93] 463 Md. at 606.

found LVNV had been operating as a collection agency since 2005, the court held LVNV's liability began on October 1, 2007—the day an amendment to Maryland's collection agency act took effect.[94] Prior to the amendment, Maryland's statute defined "collection agency" as a person who "engages directly or indirectly in the business of collecting for, or soliciting from another, a consumer claim."[95] The amendment added an alternative definition: a person "who engages directly or indirectly in the business of collecting a consumer claim that person owns, if the claim was in default when the person acquired it."[96] In other words, the Maryland legislature amended its statute specifically to include business practices like those of First Financial.[97]

*Gray* was decided against a similar legislative background. As originally enacted, Washington's collection agency statute defined "collection agency" as "[a]ny person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due . . . another person."[98] The state legislature amended the statute in 2013 to add an additional definition specifically encompassing debt buyers: "[a]ny person or entity that is engaged in the business of purchasing delinquent or charged off claims for collection purposes, whether it collects the claims itself or hires a third party . . . to collect such claims."[99] But unlike in *Finch*, the *Gray* court held that debt buyers were collection agencies under Washington's statute both in the original and amended statutory language.[100] Although concluding the statute was ambiguous, the court held that "a reasonable reading of the statute is that it defines two types

---

[94] *Id.* at 603–604.

[95] *Id.* at 603.

[96] *Id.*

[97] *Id.*

[98] 181 Wash. 2d at 335.

[99] *Id.*

[100] *Id.* at 338.

of 'collection agencies': those that solicit claims for collection and those that collect claims owed to another. Collection agencies that fall within the first category of entities . . . need not collect claims owed to another." [101] At a high level of generality, the *Gray* decision is consistent with the court's conclusion here: some language in the statute refers to debt collectors who collect claims owed to another, while other language is broader and includes debt buyers whose principal business is the collection of debts. Ultimately, however, the Washington Supreme Court's interpretation of a Washington statue, containing language different than the Registration Statute, is of little interpretive value here.

The same is true of the Idaho Supreme Court decision cited by First Financial.[102] There, PurCo was not registered as a collection agency despite pursuing claims in Idaho courts on behalf of Thrifty Car Rental. Interpreting Idaho's version of the Registration Statute, the Idaho Supreme Court stated "if PurCo was attempting to collect on the claim it owned, then it was not acting as a collection agency."[103] Concluding that Thrifty had only partially assigned its claims to PurCo, the court found PurCo liable under the statute.[104] But PurCo was not a debt purchaser like First Financial. Rather, PurCo was a traditional debt collector. The court did not define "collection office" under the statute, nor did it consider whether Idaho's statute would apply to debt purchasers like First Financial. Like *Finch* and *Gray*, *PurCo*'s relevance is minimal here. In short, these decisions neither add to nor detract from this court's interpretation of "collection office" or its subsequent conclusion that First Financial is subject to the Registration Statute.

---

[101] *Id.* at 340. Because it was answering a question certified to it by the U.S. District Court for the Eastern District of Washington, the court did not go on to determine whether the debt buyer actually fell within the definition of "collection agency."

[102] *Purco Fleet Servs. v. Idaho State Dept. of Fin.*, 140 Idaho 121 (2004).

[103] *Id.* at 125.

[104] *Id.* at 126.

## D. First Financial's Non-Textual Arguments

First Financial raises three additional arguments not related to the Registration Statute's text to contend the Statute should not be applied to debt buyers like itself. First, First Financial asserts it "does not actually collect the debts it owns," but instead acts through third parties like the Gurstel Law Firm.[105] This cannot be grounds to forgo applying the Registration Statute to debt buyers like First Financial. Any time a debt collector seeks to sue in court to collect on a debt, as First Financial has done on many occasions, the UCAA mandates it do so through a duly licensed attorney.[106] If acting through an attorney absolved debt collectors of the Registration Statute's requirements, there would be little left of the law.

Second, First Financial maintains "[r]equiring entities like First Financial to register and post a bond . . . would add *nothing* to the consumer protection regime."[107] Policy arguments like this fall outside the province of this court. Nevertheless, several courts have recognized that allowing debt buyers to operate unregulated leads to conduct "often border[ing] on fraud."[108] Indeed, as the *Gray* court noted:

> Many of the worst abuses in the debt collection industry are by debt buyers. Debt buyers purchase mass portfolios of charged off debt for pennies on the dollar, with little evidentiary basis, and get massive default judgments because the consumers have no notice of the lawsuit. Consumers have had to go to great lengths to rectify judgments based on fraudulent or paid-off claims that were sold to debt buyers who did not know they were buying illegitimate claims.[109]

---

[105] Dkt. 21 (Reply) at 13.

[106] Utah Code Ann. § 12-1-8 ("All legal processes, pleadings, and court representations shall be prepared and conducted by a duly licensed attorney . . . .").

[107] Dkt. 16 (Def.'s MSJ) at 11 (emphasis added).

[108] *Finch*, 463 Md. at 603.

[109] 181 Wash. 2d at 337 (quoting a legislative staff summary of public testimony about the amendment to Washington's debt collection act).

This is consistent with the FTC's stated concern that debt buyers "may have insufficient or inaccurate information when they collect on debts, which may result in collectors seeking to recover from the wrong consumer or recover the wrong amount."[110]

Third, First Financial insists there is no "principled basis for drawing a line at companies like First Financial."[111] First Financial cautions that applying the Registration Statute to debt buyers would force all creditors (besides those expressly excepted) to register and post a bond.[112] Here, the court has defined "collection office" as a business the principal purpose of which is the collection of any account, bill, or other indebtedness. Under this definition, no reasonable court could conclude a hospital, dentist, or other individual creditor pursuing an outstanding debt has *as its principal purpose* the collection of debts. In short, drawing a principled distinction between debt buyers and other traditional creditors poses no challenge.

## CONCLUSION

For the reasons explained above, First Financial's Motion for Certification and Motion for Summary Judgment are DENIED.[113]

SO ORDERED this 5th day of March 2020.

BY THE COURT:

_____

ROBERT J. SHELBY
United States Chief District Judge

---

[110] 2013 FTC Report at i.

[111] Dkt. 16 (Def.'s MSJ) at 12.

[112] *Id.*

[113] Dkt. 16; Dkt. 22.