IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRYSTAL LAWRENCE,<br><br>On behalf of Plaintiff and Class,<br><br>v.<br><br>FIRST FINANCIAL INVESTMENT FUND V, LLC,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO CERTIFY A CLASS**<br><br>Case No. 2:19-cv-00174-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

Plaintiff Crystal Lawrence moves the court to certify her class action against Defendant First Financial Investment Fund V, LLC, for allegedly violating the Fair Debt Collection Practices Act (FDCPA) and Utah Consumer Sales Practices Act (UCSPA) by pursuing judgments on defaulted debts without registering as a debt collector in Utah. Having reviewed Lawrence's Motion to Certify a Class[1] and for the reasons explained below, the court GRANTS the Motion.

## BACKGROUND

First Financial's business is to purchase defaulted third-party debts and then pursue collection of those debts for its own benefit.[2] After Lawrence defaulted on a medical debt, First Financial acquired her account and filed a debt collection action against her.[3] In September

---

[1] Dkt. 42.

[2] Dkt. 56 at 2.

[3] *Id.*

2018, First Financial obtained a judgment against Lawrence for $2,492.17.[4]  First Financial was not registered as a debt collection agency in Utah when it filed that action.[5]

Lawrence then filed a Complaint[6] against First Financial in February 2019, alleging that First Financial violated the FDCPA and UCSPA because at the time it commenced its collection action against her First Financial was not a registered debt collector as required by Utah Code Ann. § 12-1-1 (the Registration Statute).[7]  Lawrence brought her claims against First Financial individually and on behalf of an FDCPA Class and a UCSPA Class.[8]

In April 2019, First Financial moved for summary judgment on Lawrence's claims.[9] First Financial argued Lawrence's claims fail because the Registration Statute does not apply to it.[10]  The court disagreed and denied First Financial's Motion for Summary Judgment.[11] Specifically, the court concluded that the Registration Statute, including its registration requirement for debt collectors, applies to First Financial.[12]

Lawrence now moves for certification of the FDCPA Class and the UCSPA Class.[13]  She requests the FDCPA Class consist of "(a) all individuals; (b) against whom First Financial; (c) filed a debt collection lawsuit in Utah; (d) while First Financial was unlicensed as a debt collector in Utah; and (e) where the lawsuit was filed within the one (1) year period immediately

---

[4] *Id.* at 3.

[5] *Id.* at 2–3.

[6] *See* Dkt. 2-2 (Complaint).  Lawrence originally filed her Complaint in Utah state court, but First Financial removed the action to this court in March 2019.  *See* Dkt. 2.

[7] Dkt. 2-2 (Complaint) ¶¶ 27–42.

[8] *Id.* ¶¶ 43-45.

[9] *See* Dkt. 16.

[10] *See id.* at 2–3.

[11] *See* Dkt. 56 at 25.

[12] *Id.* at 21.

[13] Dkt. 42 at 2–3.

preceding the filing of th[e] [C]omplaint."[14]  She requests the UCSPA Class consist of "(a) all

individuals; (b) against whom First Financial; (c) filed a debt collection lawsuit in Utah; (d)

while First Financial was unlicensed as a debt collector in Utah; and (e) where the lawsuit was

filed within the four (4) year period immediately preceding the filing of th[e] [C]omplaint."[15]

Those classes would allegedly consist of more than 1,767 debtors.[16]

**LEGAL STANDARD**[17]

Rule 23 of the Federal Rules of Civil Procedure provides the standard for deciding class

certification motions.[18]  To obtain class certification, a plaintiff "must affirmatively demonstrate

[her] compliance with Rule 23,"[19] which requires her to show under a strict burden of proof that

all four prerequisites under Rule 23(a) are met.[20]  Those prerequisites are: "(1) numerosity, (2)

commonality, (3) typicality, and (4) adequacy of representation."[21]  Next, a plaintiff must

establish one of the three requirements under Rule 23(b).[22]  Lawrence argues she has satisfied

Rule 23(b)(3), which "allows certification of a class when the court finds that questions of law or

fact common to class members *predominate* over any questions affecting only individual

---

[14] *Id.* at 2.

[15] *Id.* at 2–3.

[16] *Id.* at 3.

[17] The UCSPA includes a section governing certification of UCSPA classes.  *See* Utah Code Ann. § 13-11-20.  This court has previously concluded that Federal Rule of Civil Procedure 23 controls in this court.  *See Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251, 1259 (D. Utah 2018).  For this reason, the court evaluates Lawrence's proposed classes under the federal rule.

[18] *See* Fed. R. Civ. P. 23; *see also Shook v. El Paso Cty.*, 386 F.3d 963, 971 (10th Cir. 2004) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (citation omitted).

[19] *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotation marks and citation omitted).

[20] *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (quotation marks and citation omitted).

[21] *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1228 (10th Cir. 2013).

[22] *See Esplin v. Hirschi*, 402 F.2d 94, 98 (10th Cir. 1968).

members, and that a class action is therefore superior to other available methods for fairly and efficiently adjudicating the controversy."[23]

"The decision whether to grant or deny class certification involves intensely practical considerations . . . and therefore belongs within the discretion of the trial court."[24]  The court should certify a class only if, "after rigorous analysis," it is satisfied "that the prerequisites of Rule 23[] have been satisfied."[25]  To determine if a plaintiff has met her burden, the court "must accept the substantive allegations of the complaint as true" and "may probe behind the pleadings and examine the facts and evidence in the case."[26]  This analysis "frequently will entail some overlap with the merits of the plaintiff's underlying claim,"[27] but "the court's responsibility is to carefully apply the requirements of Rule 23[]."[28]

## ANALYSIS

The court first considers whether Lawrence has satisfied Rule 23(a)'s requirements, and then turns to Rule 23(b).  As explained below, the court concludes Lawrence has satisfied Rule 23.

### I.    Lawrence Meets Rule 23(a)'s Requirements

Rule 23(a) permits

[o]ne or more members of a class [to] sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the

---

[23] *Tabor*, 703 F.3d at 1230 (quotation marks and citation omitted).

[24] *Id.* at 1227 (quotation marks and citations omitted); *Trevizo*, 455 F.3d at 1163 ("The district court retains discretion to determine commonality because it is in the best position to determine the facts of the case, to appreciate the consequences of alternative methods of resolving the issues of the case and to select the most efficient method for their resolution.") (quotation marks, ellipses, and citation omitted).

[25] *Comcast*, 569 U.S. at 33 (citation omitted).

[26] *Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499, 503 (D. Kan. Sept. 29, 2015) (quotation marks and citations omitted).

[27] *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)) (brackets and ellipses omitted).

[28] *Shook*, 386 F.3d at 971 (quotation marks and citation omitted).

claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.[29]

"[T]he party seeking class certification must affirmatively demonstrate [her] compliance with [Rule 23(a)]—that is, [she] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."[30]  Indeed, "[a]ctual, not presumed, conformance . . . is required."[31]  Accordingly, the court has an "independent obligation" to verify that a plaintiff meets these requirements, which "[o]ften . . . requires looking at the merits of a plaintiff's claims."[32]

### a.  Numerosity

Rule 23(a)(1) imposes a burden "upon plaintiffs seeking to represent a class to establish that the class is so numerous as to make joinder impracticable."[33]  To satisfy that burden, a plaintiff "must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved."[34]  In the Tenth Circuit, "there is no set formula to determine if the class is so numerous that it should be certified."[35]  Instead, numerosity is a "fact-specific inquiry," and the court has "wide latitude" to determine if it is satisfied.[36]

---

[29] Fed. R. Civ. P. 23(a)(1)–(4).

[30] *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) (quotation marks and citation omitted).

[31] *Tripp*, 310 F.R.D. at 503 (quoting *Dukes*, 564 U.S. at 351) (quotation marks omitted).

[32] *Roderick*, 725 F.3d at 1217 (citation omitted).

[33] *Peterson v. Okla. City Housing Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976).

[34] *Tripp*, 310 F.R.D. at 504 (citation omitted).

[35] *Trevizo*, 455 F.3d at 1162 (quotation marks and citation omitted).

[36] *Id.* (citation omitted).

Lawrence alleges her FDCPA Class will consist of approximately 800 debtors sued by First Financial from February 2018 to February 2019.[37]  She alleges her UCSPA Class will consist of more than 1,767 debtors sued by First Financial from approximately February 2015 to February 2019.[38]  To support her allegations, Lawrence submitted an email from First Financial's counsel, which represents, "1767 suits were filed by [First Financial] in the three year period preceding the filing of your client's complaint."[39]  In addition, she submitted an exhibit that lists 779 cases, including case numbers and filing dates, First Financial purportedly filed against debtors in Utah from May 2018 to February 2019.[40]  Lawrence argues the number of class members is so high that joinder is impracticable.[41]  The court agrees and finds that numerosity is satisfied because joinder would be impracticable given the large number of class members in each class.

### b.  Commonality

To satisfy Rule 23(a)(2)'s commonality requirement, a plaintiff "must demonstrate that there are 'questions of law or fact common to [each] class.'"[42]  This requires Lawrence to be part of the classes and "possess the same interest and suffer the same injury" as the putative class members.[43]  The plaintiff's and class members' "claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one

---

[37] Dkt. 42 at 2–3.

[38] *Id.* at 3.

[39] Dkt. 42-1 at 2.

[40] *See* Dkt. 42-2.

[41] Dkt. 42 at 5.  Financial First makes no argument concerning the numerosity requirement.  *See* Dkt. 49.

[42] *Tripp*, 310 F.R.D. at 505 (quoting Fed. R. Civ. P. Rule 23(a)(2)) (alteration in original).

[43] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quotation marks and citation omitted).

of the claims in one stroke."[44]  Indeed, "[w]hat matters to class certification is . . . the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."[45]  A single common question may satisfy this requirement.[46]

Lawrence posits the common question here is "whether [First Financial's] unlicensed status when it filed lawsuits violate the FDCPA and UCSPA," and argues commonality is satisfied because resolution of this question would resolve First Financial's liability for each class member.[47]  First Financial disagrees and argues the commonality requirement is not met for two reasons.[48]  First, First Financial argues the scope of each class is overbroad because they include debtors who did not have an underlying consumer debt.[49]  Second, First Financial asserts that commonality is defeated because an individual finding must be made concerning each class members' debt.[50]  Despite the issues First Financial raises, the court concludes Lawrence has met her burden.

First Financial's concerns about the scope of the proposed classes is well-taken.  Rather than strike the classes altogether, however, the court may employ less drastic measures.  "If the court finds that the proposed definition is not sufficiently definite, it may modify the definition instead of dismissing the proposed action."[51]  Accordingly, the court limits the proposed FDCPA class to those individuals who First Financial sued for a "debt" as defined by 15 U.S.C. §

---

[44] *Dukes*, 564 U.S. at 350.

[45] *Id.* (citation omitted).

[46] *See id.* at 359.

[47] Dkt. 42 at 6.

[48] Dkt. 49 at 15.

[49] *Id.*

[50] *Id.*

[51] *Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999); *see also Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("[D]istrict courts have broad discretion to modify class definitions . . . .").

1692a(5).  The court also limits the proposed UCSPA class to those individuals who First Financial sued "in connection with a consumer transaction"[52] as defined by Utah Code Ann. § 13-11-3(2).  Lawrence acknowledges that her classes should be limited in this fashion.[53]

But First Financial's argument that commonality is defeated because an individual finding must be made for each class members' debt misses the mark.  Commonality focuses on whether at least one question exists that can be resolved on behalf of the entire class.[54]  For a commonality challenge to impact that analysis, it should "destroy the possibility of resolving the common question on a *classwide* basis."[55]  At bottom, First Financial's argument does not undermine Lawrence's common question but raises an entirely different question.  That kind of argument is better addressed under Rule 23(b)(3)'s predominance inquiry, which "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."[56]

Whether First Financial violated the FDCPA or the UCSPA when it sued debtors without complying with the Registration Statute is a question that can be resolved with an answer that will apply to every class member.  Indeed, if the court decides First Financial's failure to register

---

[52] Utah Code Ann. § 13-11-4(1).

[53] *See* Dkt. 51 at 6 ("The prospective class is limited to Utah residents who were sued by Defendant in an attempt to collect a consumer debt.").

[54] *See Dukes*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do . . . . We consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether the common questions *predominate*, but in order to determine (as Rule 23(a)(2) requires) whether there *is* even a single common question.") (quotation marks, brackets, and citations omitted).

[55] *Chieftain Royalty Co. v. XTO Energy, Inc.*, 528 F. App'x. 938, 942 (10th Cir. 2013); *see Dukes*, 564 U.S. at 350 ("Dissimilarities within the proposed class are what *have the potential to impede the generation of common answers*.") (emphasis added) (citation omitted).

[56] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (citation omitted); *see also Gradisher v. Check Enf't Unit, Inc.*, 203 F.R.D. 271, 277 (W.D. Mich. 2001) ("CEU contends that Gradisher cannot establish common questions of law or fact because there is no way to ascertain whether the notices or letters were sent in an effort to collect a personal, family, or household debt.  CEU's argument is really addressed to the predominance inquiry under Rule 23(b)(3) rather than to commonality.").

as a debt collector violated the FDCPA and UCSPA, Lawrence and each class member would have suffered the same injury—being sued by an unlicensed debt collector—and their entitlement to relief would be resolved.  Conversely, if the court determined First Financial is not liable under the statutes, the claims would be resolved for each class member.  "Because resolving [this legal issue] would resolve the question of [First Financial's] liability under each statute to each member of the purported class[es], commonality exists."[57]

### c.  Typicality

Under Rule 23(a)(3), a plaintiff must demonstrate that her "claims . . . are typical of the claims . . . of the class."[58]  "[L]ike commonality, typicality exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[59]  But the typicality requirement does "not require that every member of the class share a fact situation *identical* to that of the named plaintiff."[60]  Rather, this requirement is met "so long as the claims of the class representative and class members are based on the same legal or remedial theory."[61]

Lawrence argues her claims are typical of the proposed class members' claims because she alleges First Financial violated the FDCPA and the UCSPA by suing her, like each class member, to collect a debt without complying with the Registration Statute.[62]  First Financial counters by arguing Lawrence has not satisfied the typicality requirement because (1) res

---

[57] *Morrison v. Clear Mgmt. Sols.*, No. 1:17-cv-51, 2019 WL 122905, at *2 (D. Utah Jan. 7, 2019); *see Menocal v. GEO Group, Inc.*, 882 F.3d 905, 924 (10th Cir. 2018) ("[A]nswering this question would resolve an issue that is central to the validity of each one of the claims in one stroke.") (quotation marks and citation omitted).

[58] Fed. R. Civ. P. 23(a)(3).

[59] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010) (citation omitted).

[60] *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014) (citation omitted).

[61] *Id.* (citation omitted).

[62] Dkt. 42 at 6–7.

judicata is a unique defense available against Lawrence; (2) some class members released their individual claims during the underlying debt collection lawsuits, but Lawrence did not; (3) First Financial obtained a judgment against Lawrence but not against other class members, and Lawrence seeks to void that judgment; and (4) Lawrence is seeking emotional distress damages.[63]  First Financial also relies on these arguments to challenge class certification under Rule 23(a)(4)'s adequacy requirement and Rule 23(b)(3)'s predominance requirement.[64]

Having reviewed First Financial's arguments, the court concludes only two—voiding the underlying judgments and Lawrence's request for emotional distress damages—are relevant to the typicality analysis.  Rule 23(a)'s commonality, typicality, and adequacy requirements "tend to merge" because they "serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."[65]  But typicality and adequacy take different paths to achieve their common goal.  Typicality focuses on the theories underlying the representative plaintiff's claims and the classes' claims,[66] and adequacy ensures the named plaintiff and class counsel, based on individual characteristics, are capable of representing the class without impediments.[67]  Thus, arguments directed at Lawrence's ability to act as class representative, instead of class-defeating variances in the underlying theories, are irrelevant to typicality.  The

---

[63] Dkt. 49 at 16–19.

[64] *See id.* at 19–25, 27–29.

[65] *Dukes*, 564 U.S. at 349 n.5.

[66] *See Menocal*, 882 F.3d at 917 ("Typicality requires *only that* the claims of the class representative and class members are based on the same legal or remedial theory.") (quotation marks and citation omitted).

[67] *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Circuit 2002) ("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?") (citation omitted).

court will therefore address First Financial's res judicata and release agreements arguments when considering Rule 23's adequacy and predominance requirements.

Turning to First Financial's relevant typicality arguments, the court concludes each is without merit. First Financial argues Lawrence's claims are atypical of the proposed classes because First Financial obtained a judgment against her that she challenges, but only a subset of individuals in each class had similar judgments entered against them.[68] That is, because a "majority of [the] proposed class members will not be faced with trying to mount a collateral attack on the judgments," Lawrence's claims are not typical of the classes' claims.[69] In response, Lawrence contends that typicality is not defeated because once the common and typical issues of the class are resolved, she can pursue voiding the judgments on behalf of herself and a subclass of approximately 645 people.[70]

The court agrees with Lawrence. Rule 23(c) permits that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues" and that "a class may be divided into subclasses that are each treated as a class under [Rule 23]."[71] The scenario presented by Lawrence, attempting to void the underlying judgments of a class of 645 people

---

[68] Dkt. 49 at 18–19.

[69] *Id.* at 18.

[70] *See* Dkt. 51 at 11–12. In the email Lawrence received from First Financial's counsel and submitted with her Motion, First Financial's counsel represented that 645 of the 1,767 underlying debt collection cases resulted in judgments. Dkt. 42-1 at 2.

[71] Fed. R. Civ. P. 23(c)(4)–(5).

once liability has been established on behalf of a broader class, is an appropriate scenario for implementing Rule 23(c)'s procedures.[72]

Next, First Financial argues Lawrence's claims are atypical of the proposed classes because she is seeking emotional distress damages for herself.[73]  Lawrence, however, represents she will no longer seek those damages if the classes are certified.[74]  Accordingly, Lawrence's request for emotional damages does not impact typicality because she no longer requests them.

In sum, typicality is satisfied here because Lawrence's and the class members' claims rely on the same theory: First Financial violated the FDCPA and UCSPA by suing debtors without first complying with the Registration Statute.[75]  Further, Lawrence's harm, being sued by an unlicensed debt collector, is the same harm experienced by the class members.[76]  Indeed, based on the record before it, the court cannot identify "circumstances that would give rise to a different theory of liability" for Lawrence or the putative class members.[77]  If First Financial is found liable under Lawrence's theory, a subclass can later be established—assuming it complies

---

[72] *See Roderick*, 725 F.3d at 1220 ("That said, there are ways to preserve the class action model in the face of individualized damages. . . . But we believe the district court is in the best position to evaluate the practical difficulties which inhere in the class action format, and is especially suited to tailor the proceedings accordingly.") (citations omitted); *see also Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) ("Final resolution of named plaintiff Adamson's claims for social security benefits and attorney's fees may render his claims no longer typical of those of the class, but it does not require the class claims to be dismissed.  If the district court considers Adamson no longer an adequate class representative under Rule 23(a)(4), it should consider intervention by other members of the proposed class or the addition of a named plaintiff who would satisfy the requirements of typicality and adequacy of representation.") (citations omitted); *Comcast*, 569 U.S. at 41 n.* (Ginsburg, J. and Breyer, J., dissenting) ("[A] class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings. . . . Further, a certification order may be altered or amended as the case unfolds.") (citations omitted).

[73] Dkt. 49 at 19.

[74] Dkt. 51 at 12 ("To clarify, Plaintiff only seeks emotional distress damages if the case is not certified as a class.").

[75] *See Menocal*, 882 F.3d at 917 (concluding the typicality requirement is met when the class members, including class representatives, rely on the same legal theory).

[76] *See Morrison*, 2019 WL 122905, at *2 (concluding typicality is met when the class members and the class representative shared the same type of harm under the plaintiff's theory.).

[77] *Menocal*, 882 F.3d at 917.

with Rule 23—to attempt to void the underlying judgments First Financial obtained against Lawrence and 645 class members.

### d.  Adequacy of Representation

Rule 23(a)(4) requires a class representative to "fairly and adequately protect the interests of the class."[78]  This requirement "factors in competency and conflicts of class counsel"[79] and requires: (1) the class representative and their counsel to not have any "conflicts of interest with other class members," and (2) the class representative and their counsel to "prosecute the action vigorously on behalf of the class."[80]

First, conflicts may exist when the class representative "put[s] [her] own interests above those of the class."[81]  In a declaration she submitted with her Motion, Lawrence asserts that she has no conflicts of interest with putative class members.[82]  Lawrence's counsel submitted declarations with similar assertions.[83]  This is sufficient for the court to conclude that no conflicts of interest exist between Lawrence and the putative class members or Lawrence's counsel and the putative class members at this time.  Indeed, Lawrence's theory is that she and the putative class members were harmed by First Financial filing debt collection lawsuits against them without complying with the Registration Statute.  Proving the culpability of this conduct does not place Lawrence in conflict with the putative class members.  Accordingly, Lawrence has satisfied the first adequacy prong.

---

[78] Fed. R. Civ. P. 23(a)(4).

[79] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).

[80] *Rutter*, 314 F.3d at 1187–88 (citations omitted).

[81] *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1204 (10th Cir. 2006).

[82] Dkt. 42-3 (Lawrence Decl.) ¶¶ 6–9.

[83] Dkt. 42-4 (Borison Decl.) ¶ 11; Dkt. 42-5 (Ayres Decl.) ¶ 7; Dkt. 42-6 (Baczynski Decl.) ¶ 7.

Second, in their declarations, Lawrence and her counsel represent they will devote the necessary resources to this litigation and will continue to pursue this action vigorously on behalf of the classes.[84]  Further, at least one of the three attorneys Lawrence proposes as class counsel has extensive class action litigation experience involving consumer protection laws, including the FDCPA.[85]  The other two attorneys have less experience with class action litigation, but have experience with federal and state consumer protection laws.[86]  Moreover, the court has not identified any concerns with proposed class counsel's competency in litigating these claims on behalf of the proposed classes, and First Financial does not contest this point.  Accordingly, Lawrence has satisfied the second prong of adequacy.

But First Financial argues Lawrence is not an adequate class representative for essentially the same reasons it argues she fails to establish typicality and predominance.  That is, First Financial contends Lawrence is not an adequate class representative because (1) her claims are subject to a res judicata defense, but other class members' claims are not; (2) Lawrence did not sign a release agreement, but other class members did; (3) Lawrence is seeking damages that are not available to the class; and (4) Lawrence's motion for certification is untimely.[87]  The court addresses each argument in turn.

---

[84] Dkt. 42 at 7; Dkt. 42-3 (Lawrence Decl.) ¶¶ 4, 8; Dkt. 42-4 (Borison Decl.) ¶ 5; Dkt. 42-5 (Ayres Decl.) ¶ 5; Dkt. 42-6 (Baczynski Decl.) ¶ 5.

[85] Dkt. 42-4 (Borison Decl.) ¶¶ 3–10.

[86] Dkt. 42-5 (Ayres Decl.) ¶¶ 3–6; Dkt. 42-6 (Baczynski Decl.) ¶¶ 3–6.

[87] Dkt. 49 at 20–26.

### i. First Financial's Res Judicata Defense Does Not Defeat Adequacy

First Financial argues Lawrence is not an adequate class representative because it obtained a judgment against her, but did not obtain judgments against other class members.[88] Because Lawrence will have to focus on a defense that is unique to her and only 645 of the 1,767 class members, First Financial maintains she is in conflict with a majority of the proposed classes' members.[89]  In response, Lawrence argues that she is not inadequate because at least 645 other class members are subject to the same res judicata defense, and the res judicata defense is meritless.[90]

The court is not aware of and the parties have cited to no binding precedent establishing a standard for determining whether a proposed defense defeats adequacy.  Rather, the parties rely on other circuits' reasoning that is at odds with Tenth Circuit precedent.  For example, both parties cite *Beck v. Maximus, Inc.* to support their arguments.[91]  In *Beck*, the Third Circuit placed the burden on the defendant to demonstrate that "[a] proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation."[92]  But the Tenth Circuit has explained that it is an abuse of discretion to shift Rule 23(a)'s "strict burden of proof" from a plaintiff to a defendant.[93]  Further, the court declines to determine whether the res judicata defense is meritorious because the Tenth

---

[88] Dkt. 49 at 20–22.

[89] *Id.* at 16–17.

[90] Dkt. 51 at 8–10, 14.

[91] Dkt. 49 at 20; Dkt. 51 at 11.

[92] *Beck v. Maximus, Inc.*, 457 F.3d 291, 300–01 (3d Cir. 2006).

[93] *Roderick*, 725 F.3d at 1218 ("Further, the court may have altered the burden of proof by requiring XTO to disprove commonality.  Relaxing and shifting Rule 23(a)'s strict burden of proof . . . results in an abuse of discretion.") (quotation marks and citations omitted).

Circuit instructs courts not to "evaluate the *strength* of a cause of action at the class certification stage."[94]  At bottom, it is this court's responsibility to apply Tenth Circuit precedent, which means the court must ask whether a defense—like res judicata—raised against Lawrence and 645 other class members creates a conflict between her and the unaffected class members.  The court concludes it does not.

"Minor conflicts among class members do not defeat class certification; to defeat class certification, a conflict must be 'fundamental' and go to specific issues in controversy."[95]  Fundamental conflicts "exist[] where some class members claim to have been harmed by conduct which resulted in [a] benefit to other class members."[96]  In those situations, a proposed class representative "cannot adequately represent the interests of the class because [her] interests are actually or potentially antagonistic to or in conflict with interests and objectives of other class members."[97]  However, adequacy is not defeated merely by "potential conflicts that might arise at a later stage in the litigation."[98]

First Financial's res judicata defense does not create a conflict of interest between Lawrence and the proposed class members who did not have a judgment entered against them.  This is because Lawrence's response to the defense would not put her at odds with those class members or harm those class members' interests.  Instead, if the court determines res judicata applies to Lawrence, her claims and 645 other class members' claims would be resolved, making it the type of decision that should be resolved as part of a class action.  If that occurs, the court

---

[94] *Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009) (citation omitted).

[95] *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 671 (D. Kan. 2013) (citations omitted).

[96] *Id.* (citation omitted).

[97] *Id.* (citation omitted).

[98] *Id.* (citation omitted).

may dismiss the case or "consider intervention by other members of the [unaffected] proposed class[es] or the addition of a named plaintiff who would satisfy the requirements of typicality and adequacy of representation."[99]

### ii.  The Release Agreements Do Not Defeat Adequacy

First Financial argues Lawrence is an inadequate class representative because she did not sign a release agreement, but "many" members of the proposed classes did.[100]  The Tenth Circuit has not addressed this issue.  The courts that have addressed the issue, however, consistently conclude that "proposed class members who have executed releases [cannot] be represented by individuals who have not executed a release."[101]  The court agrees with these courts' reasoning because even if someone may challenge the releases' enforceability, the releases' existence "adds new and significant issues" that a named plaintiff has no incentive to address if she is not subject to a similar release agreement.[102]  Thus, this scenario places a named plaintiff in a position to "put [her] own interests above the class"[103] and raises serious concerns about "the adequacy of [her] representation of other class members."[104]

Lawrence concedes she is not a proper class representative for class members who executed release agreements with First Financial during their underlying debt collection lawsuits.[105]  But she argues there is insufficient evidence concerning the releases to prevent

---

[99] *Adamson*, 855 F.2d at 676 (citations omitted).

[100] Dkt. 49 at 22–23.

[101] *Melong v. Micronesian Claims Comm'n*, 643 F.2d 10, 13 (D.C. Cir. 1980); *see Stafford v. Brink's, Inc.*, No. CV-14-01352-MWF (PLAx), 2015 WL 12699458, at *13 (C.D. Cal. Dec. 1, 2015) (collecting cases that agreed with the holding in *Melong*).

[102] *Melong*, 643 F.2d at 15.

[103] *Carpenter*, 456 F.3d at 1204.

[104] *Melong*, 643 F.2d at 15.

[105] Dkt. 51 at 10–11.

certification of the proposed classes.[106]  Specifically, she questions whether the releases apply to

FDCPA claims and whether enough putative class members executed the releases to impact the

court's inquiry under Rule 23(a).[107]  The court agrees with Lawrence because, based on the

record before it, First Financial's argument is based on a hypothetical situation that may not

impact this action.

The only evidence before the court concerning the release agreements is a declaration

from T.R. Brown, First Financial's Senior Executive Director of Investment Analysis,

Underwriting & Operational Strategy.[108]  Brown represents that "First Financial resolved many

of the [underlying debt collection cases]" with putative class members "by entering into a

confidential settlement agreement and general release with individual defendants."[109]  Nothing

more is said about the release agreements, and no release agreements—redacted, boilerplate, or

otherwise—were submitted.  Accordingly, the court cannot determine whether the releases apply

to any of the purported class members' claims.[110]  If the court had information showing the

releases applied, it could limit the class definitions by excluding individuals who had executed

releases.  Without that information, however, the court concludes it is more practical to certify

the proposed classes and exclude members subject to the release agreements if it later determines

the releases are applicable.

---

[106] *Id.*

[107] *Id.*

[108] Dkt. 49-1 (Brown Decl.) ¶ 1.

[109] *Id.* ¶ 8.

[110] *See Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091, at *3 n.5 (N.D. Ill. Dec. 1, 2000) (concluding the existence of release provisions was inadequate to prevent class certification, in part, because the court could not "determine on the record before it how many or even if releases were signed by potential class members").

### iii.  Lawrence's Requested Remedies Do Not Defeat Adequacy

First Financial posits there are three reasons why Lawrence's requested remedies make her an inadequate class representative.[111]  First, it argues Lawrence is like the plaintiff in *Hooks v. General Finance Corp.* because she is seeking individual damages.[112]  In *Hooks*, the court found the plaintiff was in conflict with the putative class members because he insisted "that he recover the full statutory award while other members of the class would be limited to a pro rata share of the class award."[113]  But unlike the *Hook* plaintiff who would represent the class "*only if he could do so without sacrificing the full individual award,*"[114] Lawrence has repudiated her claim for emotional distress damages to permit class certification and aligned her damages with the putative class members' damages.[115]  Because Lawrence has placed the class members' interests above her own, she is not in conflict with the proposed classes.

Second, First Financial argues Lawrence's request for actual or statutory damages places her in conflict with the proposed UCSPA class members because she requests only declaratory or injunctive relief on behalf of those class members.[116]  Lawrence disagrees, arguing that damages are available for the UCSPA class pursuant to the Supreme Court's holding in *Shady Grove Orthopedic Associates., P.A. v. Allstate Insurance Co*.[117]  But the relief Lawrence requests in her

---

[111] Dkt. 49 at 24–25.

[112] *Id.* at 24.

[113] *Hooks v. Gen. Fin. Corp.*, 652 F.2d 651, 652 (6th Cir. 1981).

[114] *Id.* at 652 (emphasis added).

[115] Dkt. 51 at 12.

[116] Dkt. 49 at 24.

[117] *See* Dkt. 42 at 8 n.1 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)).  First Financial refutes this argument.  *See* Dkt. 49 at 25 n.3.

Complaint clearly does not include damages on behalf of the UCSPA class.[118]  Accordingly, her

argument that the UCSPA class is entitled to damages under *Shady Grove* is irrelevant.

Under the UCSPA's plain language, a consumer may seek damages for herself but not in

a class action.[119]  In a class action, the UCSPA limits the available relief to a "declaratory

judgment, an injunction, and appropriate ancillary relief."[120]  But these provisions do not place

Lawrence in conflict with the UCSPA class members because she indicates she would prosecute

the UCSPA's claims for the relief that is available.[121]  Further, the court can and does limit the

classes' certification "for liability purposes only, leaving" issues related to what relief may be

available for which class members to subsequent proceedings.[122]

Third, First Financial argues "Lawrence's apparent disregard for the statutory interests"

of the UCSPA class—because they allegedly cannot recover damages as a class—demonstrates

she is an inadequate representative.[123]  But, as addressed above, this is a conclusion that

Lawrence disputes.  Further, she has voluntarily dismissed her claim for emotional distress

damages to further the classes' interests.  Accordingly, First Financial's argument is factually

inaccurate and legally insufficient to demonstrate Lawrence is an inadequate class representative.

### iv.  Lawrence's Motion Is Timely

To challenge Lawrence's ability to prosecute this action vigorously, First Financial

argues her Motion is untimely under DUCivR 23.1(d), which requires certification motions to be

---

[118] *See* Dkt. 2-2 (Complaint) at 13 ("Grant the Utah Class declaratory and injunctive relief against Defendant to stop
Defendant from harming consumers and providing them with an unfair advantage over its competitors by engaging
in collection efforts without a license; including a preliminary and permanent injunction.").

[119] Utah Code Ann. § 13-11-19(2).

[120] *Id.* § 13-11-19(3).

[121] *See* Dkt. 51 at 15.

[122] *Roderick*, 725 F.3d at 1220 (quoting *Comcast*, 569 U.S. at 41 n.* (Ginsburg, J. and Breyer, J., dissenting)).

[123] Dkt. 49 at 24–25.

filed "within (90) days" of the case being removed to federal court.[124]  This argument is

unpersuasive because it ignores the case's procedural history.

First Financial removed this case from state court in March 2019.[125]  In April 2019, the

parties filed their Attorney Planning Meeting Report, which indicated that discovery would be

conducted in two phases.[126]  The first phase "would be limited to class certification"[127] and

would end in September 2019.[128]  On August 20, 2019, First Financial emailed Lawrence

information concerning the scope of the classes.[129]  Less than a month later, Lawrence filed her

Motion.[130]  Accordingly, there is no evidence that Lawrence delayed in filing her Motion or is

otherwise an inadequate representative for the reasons First Financial propounds.[131]

## II.    Lawrence's Class Action Complies With Rule 23(b)(3)

Having concluded that Lawrence has satisfied each element of Rule 23(a), the court now

turns to whether Lawrence also satisfies Rule 23(b)(3).  Under Rule 23(b)(3), Lawrence must

demonstrate "[1] that the questions of law or fact common to class members predominate over

any questions affecting only individual members, and [2] that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."[132]  That is, "class

status is appropriate as long as plaintiffs can establish an aggregation of legal and factual issues,

---

[124] *Id.* at 25–26 (citing DUCivR 23.1(d)).

[125] *See* Dkt. 2.

[126] Dkt. 17 ¶ 2(b).

[127] *Id.*

[128] *Id.* ¶ 2(g).

[129] *See* Dkt. 42-1 at 2.

[130] *See* Dkt. 42.

[131] As a last attack on Lawrence's adequacy, First Financial essentially argues Lawrence should have recognized that she could not be a class representative for the reasons First Financial posits—the same reasons the court has rejected throughout this order.  *See* Dkt. 49 at 26.  Accordingly, this argument is as unpersuasive as the substantive arguments it relies on for its foundation.

[132] Fed. R. Civ. P. 23(b)(3).

the uniform treatment of which is superior to ordinary one-on-one litigation."[133]  The court

concludes Lawrence has satisfied these requirements.

### a. Predominance

The commonality and predominance inquiries are similar, but "the predominance

criterion is far more demanding"[134] and "regularly presents the greatest obstacle to class

certification."[135]  The "predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation" and "asks whether the common, aggregation-

enabling, issues in the case are more prevalent or important than the non-common, aggregation-

defeating, individual issues."[136]  To determine if class issues predominate over individual issues,

the court "*characterize*[*s*] the issues in the case as common or not, and then *weigh*[*s*] which

issues predominate."[137]  This is done by "considering how the class intends to answer factual and

legal questions to prove its claim—and the extent to which the evidence needed to do so is

common or individual."[138]  Some review of Lawrence's claims is necessary to characterize the

issues as common or not.[139]

The court begins its analysis by identifying "the elements of the underlying cause[s] of

action,"—an FDCPA claim and a UCSPA claim—and then decides whether the issues presented

are susceptible to resolution with common or individualized evidence or legal determinations.[140]

---

[133] *CGC Holding*, 773 F.3d at 1086.

[134] *Amchem*, 521 U.S. at 624 (citation omitted).

[135] *CGC Holding*, 773 F.3d at 1087.

[136] *Id.* (citations omitted).

[137] *Id.* (citation omitted).

[138] *Menocal*, 882 F.3d at 915 (brackets, ellipses, and citation omitted).

[139] *See CGC Holding*, 773 F.3d at 1087–88.

[140] *Id.* at 1088 (citation omitted).

Next, the court addresses First Financial's arguments under the same framework, i.e., it determines whether the issues are common or individual and whether the individual issues outweigh the common issues.

### i. FDCPA Claim

"To prevail under the FDCPA, a plaintiff must prove that [1] the defendant is a 'debt collector' [2] who is trying to collect a 'debt' from the plaintiff [3] in violation of some provision of the FDCPA."[141]

The first and third elements are issues that are common to each class member because they can be resolved by evidence concerning First Financial, rather than each class members' unique factual circumstance. Indeed, whether First Financial qualifies as a "debt collector" under the FDCPA is primarily a legal question that can be answered only with evidence specific to First Financial. Further, the factual allegations relevant to whether First Financial violated a provision of the FDCPA are identical to every class member under Lawrence's theory[142] because the individuals become class members by virtue of First Financial having previously sued them allegedly without complying with the Registration Statute. Indeed, these issues "will be resolved the same way whether there is one plaintiff affected by the conclusion or [1,767]."[143]

---

[141] *Obduskey v. Wells Fargo*, 879 F.3d 1216, 1219 (10th Cir. 2018); *see Rhodes v. Olson Assocs., P.C.*, 83 F. Supp. 3d 1096, 1103 (D. Colo. 2015) ("To establish a violation of the FDCPA, Plaintiff must prove the following four elements: (1) Plaintiff is any natural person who is a 'consumer' within the meaning of 15 U.S.C. § 1692a(3); (2) The 'debt' arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(5); (3) Defendant collecting the debt is a 'debt collector' within the meaning of 15 U.S.C. § 1692a(6); and (4) Defendant has violated, by act or omission, a provision of the FDCPA.") (citation omitted).

[142] Lawrence claims First Financial's failure to comply with the Registration Statute violated 15 U.S.C. §§ 1692e and 1692f. Dkt. 2-2 (Complaint) ¶¶ 27–30. Under § 1692e, First Financial is prohibited from "us[ing] any false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Similarly, § 1692f prohibits First Financial from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f.

[143] *Morrison*, 2019 WL 122905, at *4.

The second element is an individual issue that is predominated by common issues. First Financial correctly argues that this element is an individual issue because it is not susceptible to common evidence.[144] This element will require the court to determine whether each class members' debt from the underlying lawsuits qualifies as "debt" under 15 U.S.C. § 1692a(5). But, "as many courts have done in other cases," the court rejects First Financial's argument that this individual issue predominates the case's common issues.[145] This is because "[t]he need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action[]."[146] Thus, "[i]f that need alone precluded certification, there would be no class actions under the FDCPA."[147] Further, the court "finds identifying class members by determining whether the debt was a consumer debt is ministerial in nature easily determined by a single yes or no question."[148] Accordingly, this issue "does not predominate over the primary question of whether" First Financial violated the FDCPA by initiating lawsuits in Utah to collect debts without first complying with the Registration Statute.[149]

---

[144] Dkt. 49 at 15, 28.

[145] *Gradisher*, 203 F.R.D. at 277.

[146] *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 357 (N.D. Ill. 1998).

[147] *Id.*

[148] *Magallon v. Vital Recovery Servs., LLC.*, No. 16cv02971 JAH-BLM, 2018 WL 1336291, at *6 (S.D. Cal. March 15, 2018). Practically speaking, the need for Lawrence to identify the underlying debts as consumer debts "should be relatively straight forward" because First Financial pursued these debts in state court. *Wilborn*, 180 F.R.D. at 357. Therefore, an easily accessible record exists for Lawrence to review, which she did with 100 cases and found 99 of them involved underlying debts for unpaid medical bills. Dkt. 51 at 6. As a preliminary matter, the court finds these debts would qualify as "debts" under the FDCPA. *See* 15 U.S.C. § 1692a(5) ("The term 'debt' means any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ."). Of course, this finding is made for class certification purposes only and does not preclude First Financial from later challenging it.

[149] *Magallon*, 2018 WL 1336291, at *6.

### ii. UCSPA Claim

The elements of a UCSPA claim are similar to an FDCPA claim.  To establish a UCSPA claim, a plaintiff must demonstrate that "[1] a supplier [2] in connection with a consumer transaction" (3) engaged in "[a] deceptive act or practice."[150]  Further, a plaintiff must "establish that [the defendant] knowingly or intentionally engaged in deceptive acts or practices."[151]

The first and third elements are common issues for the same reasons the first and third elements of Lawrence's FDCPA claims are common issues.  That is, resolution of these elements turns on facts specific to First Financial, not the individual class members.  Thus, the legal conclusions will have the same effect on Lawrence and each putative class member.

Like the FDCPA's second element, the UCPSA's second element is an individual issue that is predominated by common issues.  The court reaches this conclusion for the same reasons it reached the same conclusion under the FDCPA's second element.  Namely, the UCSPA permits class actions to resolve claims brought under its provisions.[152]  Thus, inherent in every UCSPA class action is the requirement that the named plaintiff's and the class members' debts were incurred "in connection with a consumer transaction."[153]  These individual questions can be easily resolved by reviewing the state court records of the underlying debt collection actions.  Accordingly, these individual issues are predominated by the common issues.

---

[150] Utah Code Ann. § 13-11-4(1).

[151] *Martinez v. Best Buy Co., Inc.*, 2012 UT App 186, ¶ 4, 283 P.3d 521.

[152] *See* Utah Code Ann. § 13-11-20.

[153] *Id.* § 13-11-4(1).

### iii. The Issues First Financial Raises Are Predominated By Common Issues

First Financial points to relevant issues in this case to argue Lawrence has not met the predominance requirement under Rule 23(b)(3). Specifically, First Financial argues issues related to (1) its res judicata defense, (2) the release agreements, and (3) the damages Lawrence requests in her Complaint, each preclude this court from finding that common issues predominate individual issues.[154] The court concludes these issues do not predominate the common issues Lawrence presents.

First, although not applicable to every class member, resolution of First Financial's res judicata defense would impact 645 class members. Accordingly, this issue is common for a significant number of class members. To the extent the defense is not common to the other class members, its resolution does not predominate common issues because it consists of straightforward legal questions and would not require significant—if any—discovery.

Under Utah law, "[t]here are two branches of the judicially created doctrine known as res judicata: claim preclusion and issue preclusion."[155] "Claim preclusion corresponds to causes of action; issue preclusion corresponds to the facts and issues underlying causes of action."[156] Because First Financial argues the defense would bar Lawrence's claims altogether, the court limits its analysis to whether the elements of claim preclusion would predominate the common issues in this case. The court concludes they do not.

Claim preclusion has three elements:

(1) both suits must involve the same parties or their privies, (2) the claim that is alleged to be barred must have been presented in the first suit or be one that could

---

[154] Dkt. 49 at 27–29.

[155] *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 20, 285 P.3d 1157 (quotation marks and citation omitted).

[156] *Id.* (citation omitted).

and should have been raised in the first action, and (3) the first suit must have resulted in a final judgment on the merits.[157]

The first and third elements are straight forward factual issues that will require a review of the underlying debt collection actions. Like the determination of whether the underlying actions involved consumer debt, this is a ministerial task that will not detract from the common issues. The second element requires the court to determine whether the underlying debt collection actions and the claims at issue in this case are "entirely predicated on the same set of operative facts and the same alleged injury."[158] This is a legal question that can be resolved without the need for discovery or individualized factual findings. Accordingly, First Financial's res judicata defense does not predominate the issues that are common to every class member.

Second, the release agreements do not predominate issues common to the proposed classes because once it has been shown they arguably apply to the FDCPA or UCSPA claims, those class members can be excluded from the classes. As a practical matter, this should require nothing more than a simple review of the release agreements.

Third, as explained above, the court limits the classes' certification "for liability purposes only, leaving individual damages calculations to subsequent proceedings."[159] Accordingly, the court rejects First Financial's argument that findings related to actual damages suffered by class members predominate common issues.[160]

---

[157] *Id.* ¶ 21 (quotation marks and citation omitted).

[158] *Peterson v. Armstrong*, 2014 UT App 247, ¶ 11, 337 P.3d 1058 (citation omitted).

[159] *Roderick*, 725 F.3d at 1220 (citation omitted).

[160] To be clear, nowhere in this Order is the court precluding Lawrence and the class members from pursuing damages as classes or subclasses. Instead, the court is adopting a procedure that is practical under the circumstances. Namely, the court will permit certification of Lawrence's proposed class for liability purposes and then decide whether the damages, if any, should be decided at a class level or individual level.

In sum, Lawrence has satisfied the predominance prong of Rule 23(b)(3) because there are significant common issues that predominate over the individual issues First Financial has identified.

### b. Superiority

In addition to its predominance requirement, Rule 23(b)(3) requires a plaintiff to "show that a class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'"[161]   There are four, non-exhaustive factors relevant to this inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claim in the particular forum; and (D) the likely difficulties in managing a class action.[162]

Under these factors, Lawrence has shown that class action resolution of her claims is superior to individual claims.

The first factor favors finding a class action is superior to individual actions.  First Financial argues class members' interests in controlling their claims or defenses outweigh a finding of superiority because (1) the non-common issues predominate common issues, (2) the individual plaintiffs can recover greater damages if they bring individual suits, and (3) attorney fees are available to individual plaintiffs.[163]   None of these arguments has merit.  As discussed above, common issues predominate non-common issues in this case.  Further, the potential for greater recovery in individual suits, including the availability of attorney fees, does not mean a class action is inferior to individual actions because "potential plaintiffs may be unaware of their

---

[161] *Menocal*, 882 F.3d at 915 (quoting Fed. R. Civ. P. 23(b)(3)).

[162] Fed. R. Civ. P. 23(b)(3)(A)–(D); *see Menocal*, 882 F.3d at 915 n.3 ("Although Rule 23(b)(3) states that these factors are pertinent to both superiority and predominance, most courts analyze these factors solely in determining whether a class suit will be a superior method of litigation.") (quotation marks, brackets, and citation omitted).

[163] Dkt. 49 at 29–31.

right[s], or otherwise uninclined, to bring such an action."[164]  And though the court recognizes that class members "could recover more by bringing an individual action, any plaintiff who wishes to do so can opt out of this action and file separately."[165]

The second factor also favors a finding of superiority.  Neither party has submitted evidence of another case that involves the same issues being addressed in this case.  Thus, this factor favors resolving Lawrence's claims in this class action because this case can resolve First Financial's liability under Lawrence's theory without conflicting rulings or impediments from other litigation.

The third factor likewise favors a finding of superiority.  This court is the most desirable forum for concentrating litigation on Lawrence's claims because the classes consist entirely of debtors who First Financial sued in Utah, and the parties implicitly acknowledge this court is the best forum.[166]

The fourth factor—the difficulty in managing a class action—also weighs in favor of finding the superiority requirement is met.  The "manageability" factor "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit."[167]  First Financial argues this factor disfavors a finding of superiority because individual issues predominate the common issues.[168]  But this is not the case.  Instead, as explained above, there are significant common issues—including issues that are common to substantial sub-

---

[164] *Morrison*, 2019 WL 122905, at *4.

[165] *Id.*

[166] First Financial removed this case to this court, and Lawrence never challenged that removal.  *See* Dkt. 2.

[167] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).

[168] Dkt. 49 at 31.

classes—that are best resolved as class actions because doing so would "promote economy and fairness."[169]

Lastly, Rule 23(b)(3)'s underlying policy encourages the court to certify Lawrence's classes.  Rule 23(b)(3) is available to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."[170]  Indeed,

> [t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.[171]

Lawrence's classes consist of individuals who allegedly defaulted on small personal debts.  The proposed class members are precisely the kind of litigants whose rights were meant to be protected under Rule 23(b)(3).

## CONCLUSION

Lawrence has satisfied the requirements under Rule 23 and is therefore entitled to certification of her proposed classes.  Accordingly, the Motion[172] is GRANTED as follows:

The court CERTIFIES and DEFINES the following classes:

1. The FDCPA Class shall consist of all individuals against whom First Financial filed a debt collection lawsuit in Utah to collect a "debt" as defined by 15 U.S.C. 1692a(5), while First Financial was unlicensed as a debt collector in Utah, and where the lawsuit was filed within the one (1) year period immediately preceding February 5, 2019.

2. The UCSPA Class shall consist of all individuals against whom First Financial filed a debt collection lawsuit in Utah to collect a debt incurred in connection with a "consumer transaction" as defined by Utah Code Ann. § 13-11-3(2), while First

---

[169] *Morrison*, 2019 WL 122905, at *4.

[170] *Amchem*, 521 U.S. at 617 (citation omitted).

[171] *Id.* (citation omitted).

[172] Dkt. 42.

Financial was unlicensed as a debt collector in Utah, and where the lawsuit was filed within the four (4) year period immediately preceding February 5, 2019.

The court CERTIFIES the following issue for each class: Did First Financial violate the FDCPA and/or the UCSPA when it filed debt collection lawsuits against the class members without being licensed as a debt collector under Utah Code Ann. § 12-1-1?

The court APPOINTS Scott Borison, Tyler B. Ayres, and Daniel Baczynski as class counsel.  Crystal Lawrence is APPOINTED as the class representative of the FDCPA Class and the UCSPA Class.

It is further ORDERED that the parties meet and confer concerning the form of the notice to be sent to the class members pursuant to Fed. R. Civ. P. 23(c)(2).  The parties shall provide the court with a stipulated notice or the parties' proposed notices, including supporting memoranda, no later than thirty (30) days after entry of this Order.

SO ORDERED this 17th day of August 2020.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

31