Tyler B. Ayres, Bar No. 9200
AYRES LAW FIRM
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 255-5555
Tyler@AyresLawFirm.com

Daniel Baczynski, Bar No. 15530
BACZYNSKI LAW
(708) 715-2234
Dbaczyn2@gmail.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRYSTAL LAWRENCE,<br><br>   On behalf of Plaintiff and Class,<br><br>vs.<br><br>FIRST FINANCIAL INVESTMENT FUND V, LLC,<br><br>   Defendant. | **PLAINTIFF'S SECOND STIPULATED MOTION TO AMEND CLASSES CERTIFED BY THE COURT TO SETTLEMENT CLASSES AND PROVIDE FOR NOTICE TO CLASS MEMBERS**<br><br>Case No:  2:19-cv-00174<br><br>Judge:   Robert Shelby |

## <u>INTRODUCTION</u>

Plaintiff filed this Action because First Financial filed debt-collection lawsuits against thousands of Utah residents without first registering as a collection agency, bureau, or office pursuant to Utah Code Ann. § 12-1-1. Defendant has denied it was obligated to register under the statute, or that its practices violated the Fair Debt Collection Practices Act and Utah Consumer Sales Practices Act. The case has been pending since February 2019 and has involved substantial litigation, including a motion for summary judgment and class certification. After arms-length

1

negotiations over many days between the Plaintiff and Defendant, aided by a third-party mediator, Nate Alder, the parties have reached an agreement to settle this action on a class basis. See Exhibit A. The parties now jointly seek an order amending the previously certified classes into settlement classes and preliminary approval of the settlement for purposes of sending class notice of the settlement.  As discussed below, the settlement meets the criteria of both Fed. R. Civ. P. 23(e)(2) and the Tenth Circuit's settlement-fairness factors that this Court directed the parties to address in prior order on this issue.  (D.E. 70.)  Accordingly, the Court will likely be able to approve the proposal and certify the classes for purposes of judgment, and the Court should grant the motion and direct the parties to give notice of the settlement proposal to the classes.  Fed. R. Civ. P. 23(e)(1)(B).

## <u>PLAINTIFF SEEKS THE CERTIFIED CLASSES<br>AMENDED TO THE FOLLOWING SETTLEMENT CLASSES</u>

The Plaintiff seeks the following settlement classes:

A. An FDCPA Class which consists of all individuals against whom First Financial filed a debt collection lawsuit in Utah to collect a "debt" as defined by 15 U.S.C. 1692a(5), while First Financial was unlicensed as a debt collector in Utah, and where the lawsuit was filed within the one (1) year period immediately preceding February 5, 2019; and

B. An UCSPA Class which consists of all individuals against whom First Financial filed a debt collection lawsuit in Utah to collect a debt incurred in connection with a "consumer transaction" as defined by Utah Code Ann. § 13-11-3(2), while First Financial was unlicensed as a debt collector in Utah, and where the lawsuit was filed within the four (4) year period immediately preceding February 5, 2019.

2

The proposed definitions for the settlement classes are identical to the classes certified by the Court on August 17th, 2020. (D.E. 60). The Court has already found these classes appropriate and sufficient to meet the requirements for certification under the Federal Rule of Civil Procedure 23. (*Id.*) The settlement classes eliminate any issues of manageability since there will never be a trial.

### The Settlement Classes Should be Certified And Notice to the Class Ordered

This Court is vested with the discretion to certify settlement classes pursuant to Federal Rule of Civil Procedure 23(e). *Harper v. C.R. England, Inc.*, 746 F. App'x 712, 720 (10th Cir. 2018). To determine whether to preliminarily approve the settlement and order that the class be given notice of a settlement proposal, the Court must determine that it will likely be able to (1) certify the proposed settlement classes for purposes of judgment on the proposed settlement and (2) approve the fairness of the proposed settlement under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B). Because both factors are met, the Court should preliminarily approve the settlement, certify the settlement classes, and direct notice to class members of the proposed settlement.

I.    **The Court has already ruled it will likely be able to certify the class for purposes of judgment on the proposal.**

First, the Court will likely be able to certify the settlement classes for judgment on the proposal because the Court has already ruled that certification of these classes is warranted. Where, as here, the Court has already certified a class, "the only information ordinarily necessary" to the Court's consideration of this factor is "whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was [previously] granted." Fed. R. Civ. P. 23(e)(1) advisory committee notes to 2018 amendment.

This Court has previously found all elements warranting class certification in this case have been met (D.E. 60). To briefly summarize, the Court found the number of class members (1,767) made joinder impracticable and therefore satisfied numerosity. (*Id*. at 5-6). The Court also found the class members shared the common question of whether First Financial violated the FDCPA or UCSPA when it sued debtors without complying with the Registration Statute. (*Id*. at 8-9). Furthermore, typicality was met "because Lawrence and the class members' claim rely on the same theory: First Financial violated the FDCPA and UCSPA by suing debtors without first complying with the Registration Statute". (*Id*. at 12). And the Court found Plaintiff Lawrence and her counsel adequate to represent the classes. (*Id*. at 13-14). Finally, the Court concluded that the elements of Plaintiff's claims susceptible to class-wide proof predominated over individualized issues as to the nature of each class member's transaction, and that a class action was a superior method to adjudicate claims related to small personal debts. (*Id*. at 23-25, 28-30).

Plaintiff asks the Court to certify the same classes for purposes of a settlement. Recognizing the prior and proposed class definitions were identical, the Court has already found the parties have satisfied the second element of Rule 23(e)(1)(B). (D.E. 70 at 2)[1]. Accordingly, the court is likely to be able to certify a class for purposes of settlement.

## II.    The Settlement is Fair, Adequate, and Reasonable.

Second, Rule 23(e)(2) requires the Court to ascertain whether the settlement offer will be "fair, adequate, and reasonable". Based on the relief requested, the considerable questions of law

---

[1] "In its Prior order, the court engaged in detailed analysis of the Rule 23(a) and (b)(3) standards for class certification and concluded the standards were met. The court incorporates by reference that analysis and reasoning to find the parties have satisfied this requirement". (D.E. 70 at 2).

outstanding, and the prospect of significant litigation, Plaintiff respectfully submits that the Settlement fits within Rule 23's parameters.

Plaintiff has alleged Defendant violated the FDCPA and the UCSPA. If Plaintiff were to prevail at trial, she asks the Court to vacate all judgments entered against class members in debt collection lawsuits brought by First Financial while not in compliance with the Registration Statute. Plaintiff further seeks statutory damages and the return of payments made on debts which were the subject of said lawsuits.

The Settlement provides the class with a substantial portion of the relief sought by Plaintiff.  The Settlement provides Defendant will not take or continue any action to collect from a Class Member relating to any judgment entered in an action filed by Defendant prior to December 4, 2018. Defendant will thus leave an estimated $1.8 million in Class debt uncollected. In addition, Defendant will deposit $230,000 in a Common Fund for the purpose of paying class administration fees, attorneys fees, and a pro rata distribution to class members who made payments or against whom Defendant collected monies on debts which were the subject of lawsuits filed by Defendant while unregistered.

The Settlement provides the Class with significant relief that is "fair, adequate, and reasonable" in light of the likelihood of recovery and the risks of obtaining no class relief following a trial of this matter.  As discussed below, the Settlement satisfies both the Tenth Circuit's test for evaluating the fairness of a proposed class settlement and the requirements of Rule 23(e)(2).

### The Tenth Circuit Test

When evaluating a proposed class settlement, district courts in the Tenth Circuit are required to consider four factors: "(1) whether settlement was fairly and honestly negotiated; (2)

whether serious legal and factual questions placed the litigation's outcome in doubt; (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation; and (4) [the parties] believed the settlement was fair and reasonable". *Tennille v. Western Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (citation omitted); *see also Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

       i.   *The settlement was fairly and honestly negotiated.*

When determining whether a settlement was fairly and honestly negotiated, district courts within the Tenth Circuit often consider whether the parties "have vigorously advocated their respective positions throughout the pendency of the case." *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 284 (D.Colo.1997); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1260 (D. Kan. 2006); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1241 (D.N.M. 2012). And, in general, "arms-length negotiations absent any allegations of collusion demonstrate that a class action settlement was fairly and honestly negotiated." *Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2013 U.S. Dist. LEXIS 35626, at *110 (D.N.M. Feb. 27, 2013).

Here, the parties have engaged in vigorous advocacy. The case has been pending since February 5th, 2019. The parties have already litigated a motion for summary judgment (on the novel issue of whether debt buyers are governed by the UCAA) and a motion for class certification. Plaintiff has completed class discovery, including a manual review of each debt collection filed by First Financial, and already commenced merit discovery.

The case culminated in a mediation on December 17th before an experienced, neutral mediator, Nate Alder.[2] All of Plaintiff's counsel were present for the settlement negotiations, including Scott Borison whom the Court has already found to have significant experience in consumer rights and class action cases. First Financial was represented by its counsel of record in this matter and mediation was attended by its general counsel and Chief Compliance Officer. After all-day negotiations, the parties reached an agreement which provided various categories of relief to the class and which Plaintiff and her counsel believe to be fair.

District courts within the Tenth Circuit have found similar circumstances showed that a settlement reached through arms-length negotiations was fair and reasonable. *Nat'l Am. Ins. Co. v. Rodriquez*, No. CV 19-1020 KG/CG, 2021 U.S. Dist. LEXIS 36344, at *9 (D.N.M. Feb. 26, 2021) (concluding that "arms-length negotiation after private mediation" established settlement was fairly and honestly negotiated), *report and recommendation adopted by Nat'l Am. Ins. Co. v. Rodriquez*, No. CV 19-1020 KG/CG, 2021 U.S. Dist. LEXIS 38850 (D.N.M. Mar. 1, 2021); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1241 (D.N.M. 2012) (negotiations over an extended period of time after engaging in discovery supports a finding that agreement was reached at arms' length);.*In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1260 (D. Kan. 2006) (settlement was fairly and honestly negotiated even though a resolution was reached early in the case because counsel litigated the early phases aggressively and in a manner showing expertise); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (negotiations between experienced counsel after significant discovery had occurred allowed the court to presume the

---

[2] Mr. Alder is an attorney with more than 25 years of experience representing plaintiffs and defendants in commercial litigation, personal injury, professional liability, and product liability cases.  He is a former president of the Utah State Bar and a founder and former chair of its Dispute Resolution section. *See* https://www.chrisjen.com/Attorney-Nathan-D-Alder .  Mr. Alder is also a member of the National Academy of Distinguished Neutrals. *See* https://www.nadn.org/nathan-alder .

resolution represented arm's length settlement).   The parties' settlement, negotiated with the assistance of an experienced neutral after significant litigation, was thus fairly and honestly negotiated.

> ii.   *Serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.*

The Court must then consider whether question of law or fact put the ultimate outcome of the litigation in doubt. This factor also greatly affects another factor, e.g., *the value of an immediate recovery,* in this case as discussed below.

This element does not require the Court to undergo a meticulous analysis of the merits of the case. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). Rather, the Court must determine whether it is reasonable for the parties to conclude a serious question of law exists which precludes certainty as to the result. *Id*. Based on rulings from other judges in this Federal Court for the District of Utah, this element is met by the different responses to the same or similar claims by different Judges in this district.

In *McMurray v. Forsythe Financial*, Utah consumer McMurray brought an identical suit against Forsythe Finance for operating an unlicensed collection office. *McMurray v. Forsythe Fin.*, LLC, No. 1:20-CV-8 TS, 2021 WL 83265, at *1 (D. Utah Jan. 11, 2021). There, like in the present case, Forsythe brought collection actions against Utah residents without first complying with the UCAA. *Id*. On summary judgment, Judge Stewart dismissed the case in its entirety finding all claims were barred by res judicata and that unlicensed collection cannot, as a matter of law, violate the UCSPA.

Judge Kimball reached a similar conclusion as to the USPCA claims in *Buhler v. BCQ Equities*, No. 2:19-CV-00814-DAK, 2020 WL 888733, at *5 (D. Utah Feb. 24, 2020), reconsideration denied, No. 2:19-CV-00814-DAK, 2020 WL 2085247 (D. Utah Apr. 30,

2020). There, plaintiff Buhler brought FDCPA and UCSPA claims against BCG Equities for

filing debt collection lawsuits in violation of Utah law. *Id* at *1. The debt collector did not raise

whether res judicata barred plaintiff's claims. *Id*. It did, however, argue unlicensed collection

cannot violate either of these consumer protection statutes. *Id* at * 4-5. And while Judge Kimball

ruled that unlicensed debt collection via lawsuit can violate the FDCPA, he dismissed the

UCSPA claim on the same grounds as Judge Stewart. *Id*.

These cases raise doubt as to the ultimate outcome of this case on the merits that would

almost certainly be subject to appeal if Plaintiff were to obtain any significant judgment against

First Financial at trial.  Moreover, in addition to these defenses to the merits, there are other

significant issues that create a risk that, even if Plaintiff were to prevail at trial, a judgment could

be *less* favorable to Plaintiff's than that provided for in the Settlement:

- Limitations on Available Damages in a Class Action

Utah Code § 13-11-19 provides "[a] consumer who suffers loss as a result of a violation of

this chapter may recover, but not in a class action, actual damages or $2,000." As a result, Utah law

does not permit recovery of damages in a class action. Plaintiff argues the prohibition on a damages

class action is superseded by Federal Rule of Civil Procedure 23 under the same reasoning provided

by the Supreme Court in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393,

130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010). Defendant, on the other hand, contends the limitation is

a substantive limitation on the available remedies under the UCSPA which is not superseded under

Tenth Circuit precedent interpreting *Shady Grove*. This is a disputed question of law which, if

resolved against Plaintiffs, would eliminate their ability to recover damages under the UCSPA.

Moreover, statutory damages in a class action under the FDCPA are limited to the lesser of

$500,000 or one percent of First Financial's net worth.  15 U.S.C. § 1692k(a).  Accordingly, there is

a substantial risk that Plaintiff's recovery on behalf of the class would be limited to less than the amount agreed to in the Settlement.

- Whether the Court can rule the collection judgments obtained by Defendant while unlicensed unenforceable

Plaintiff seeks, as part of her relief, a ruling that the collection judgments are unenforceable. Because the case has been removed to federal court however, this Court's jurisdiction may be limited under the Rooker-Feldman doctrine when addressing its ability to vacate or void state court judgments. Considering Defendant has an estimated $1.8 million in outstanding judgments against the class, a finding that the Court cannot adjudicate the Defendant's ability to collect on the judgments would, again, significantly harm the class member's pool of potential relief.

These unresolved issues pose several substantial legal questions that place in doubt whether Plaintiff could obtain a judgment on the merits and, if so, whether that judgment would be more favorable than that provided for by the Settlement.

iii. *The Value of an immediate recovery outweighs the mere possibility of future relief after protected and expensive litigation.*

In light of the foregoing risks, the Court must weigh the value of immediate relief to the Class against the possibility of future relief.  The claims in this matter are relatively novel and, thus, there is no controlling case law that addresses the specific issues identified above. In the experience of Plaintiff's counsel, litigation of these issues can take years to resolve. For instance, Plaintiff's counsel filed an action on unlicensed debt collection in the State of Maryland in 2011. After two rounds of appellate litigation the Defendant's liability on the claims asserted was most recently affirmed in April 2019. The case was remanded for a damages trial that has not yet occurred as of this date and is not scheduled.  Given that jury trials in this district have yet to

resume due to the COVID-19 pandemic and, given the likelihood that the novel issues in this case regarding the reach of the Registration Statute and the application of *Shady Grove* to the UCSPA's class-damages prohibition would almost certainly be appealed regardless of how they were resolved by this Court, a final resolution of this case would likely not be reached for several more years.  This is a significant time frame for consumers to wait for relief and may involve continued collection during the potential years the matter is litigated.

In contrast, the relief obtained by the settlement and the present value of the settlement is significant. Defendant will effectively forgive all outstanding judgments against the class members (roughly $1.8 million in debt) by forbearing from any further collections on those judgments. Defendant has agreed not to take any action to collect from a Class Member any additional monies on judgments obtained while unlicensed and not to assign these judgments except for purposes of debt abolishment or extinguishment. This ends collection efforts against the class members that could otherwise include garnishments of wages and property. This will effectively nullify the debts in their entirety, precluding Defendant from re-attempting to collect on the debts now that it is licensed or otherwise selling the debts to a third party for collection.

This cessation of collection of the debt may not be available under the UCSPA or the FDCPA, and it shields the class members from any future misconduct or mischief. Additionally, the settlement provides for a class fund of $230,000 for disbursement to the class members and the payment of attorneys fees, costs. As a result, the Class receives benefits without any out-of-pocket costs that may arise if they had to hire their own counsel to litigate these claims on an individual basis, as counsel would be unlikely to proceed on a contingency basis given the significant risks discussed above. The sum represents a significant percentage of the total amount

of money collected by Defendant from the Class members and, critically, of the likely recovery on behalf of the Class if this matter were to proceed to trial.

Moreover, obtaining this relief now presents a substantial benefit to the Class compared to the potential for future relief. To start, *McMurray v. Forsythe Finance* is already on appeal before the Tenth Circuit. (Appellate Case 21-4014). The Tenth Circuit's resolution of this appeal could result in Class members' claims being barred in whole or in part. If the Tenth Circuit upholds Judge Stewart's application of res judicata, it may bar relief to some class members entirely. Similarly, if the Tenth Circuit rules unlicensed collection cannot support a UCSPA claim, the class members will have lost a potent tool for establishing damages and would be limited to capped statutory damages under the FDCPA or attempting to establish actual damages on a class-wide basis.[3]

There is also an appeal before the Utah Court of Appeals regarding unlicensed debt collection and the UCSPA, which could also negatively affect the viability of the class members claims.[4] Consequently, the Class members ability to recover in this matter may be significantly hampered in the near future by the results of multiple appeals outside of this case. And, as noted above, if this case went forward without settling, it will likely generate its own appeal.

---

[3] The UCSPA allows for statutory damages of $2,000 with no statutory cap, whereas the FDCPA allows for statutory damages of *up to* $1,000, with a limitation calculated from the debt collector's net worth of, at most, $500,000. Utah Code Ann.§ 13-11-19(2); 15 U.S.C. § 1692k(a)(2).

[4] The appeal is *Haskell v. Wakefield & Associates, Inc.*, Appellate Case No. 20200412. In *Haskell*, appellees raised several alternative legal grounds for dismissing a UCSPA claim premised on unlicensed collection, including issue preclusion; a criminal statute without a private cause of action cannot be used to support a UCSPA claim; the UCAA bars unlicensed debt collection but not unlicensed collection lawsuits; and the Petition Clause immunizes criminal collection via litigation. If embraced by the Court of Appeals, any of these defenses would sink the class members' UCSPA claims.

Moreover, Plaintiff's opportunity to obtain the biggest possible relief for the class depends on an unresolved issue regarding Court's analysis of the UCSPA's class-damages prohibition under *Shady Grove* and subsequent Tenth Circuit precedent. If Plaintiff can establish UCSPA statutory damages can be applied in a class action, the class members would be entitled to roughly $3.4 million. However, if the Court were to rule against Plaintiffs, the Class would be limited to $500,000 at most in statutory damages under the FDCPA, and likely significant less. There are obviously significant hurdles to overcome before the parties reach this point. Additionally, Plaintiff has concerns regarding Defendant's ability to pay such a sum if Plaintiff were to prevail. Regardless, a ruling in Plaintiff's favor on this issue will almost certainly result in an appeal. This would significantly delay the case and further allow Defendant to collect from class members throughout the pendency of the case.

In short, the ultimate outcome for the class *could* result in significant statutory damages. However, the relevant issues are hotly contested and will not be definitively resolved in the short term. They would most likely involve significant delay through appeal, and could ultimately be decided against the Class, resulting in no or limited recovery. And while those issues are litigated, Defendant will continue to collect on its judgments to detriment of class members. The value of immediate relief, especially ceasing collecting roughly $1.8 million in debt, outweighs the potential for a better outcome at the conclusion of trial that would likely be appealed.

iv.    *The Parties and counsel believe the settlement is fair and reasonable.*

The Parties also believe the settlement is fair and reasonable. As noted above, First Financial's general counsel participated in the mediation, negotiation, and approval of the Settlement.  First Financial has already taken steps to implement the non-monetary portions of the Settlement to the benefit of the Class. Plaintiff and her counsel have discussed the settlement

offer extensively and all believe the terms are fair and reasonable to the class members. This is an area where counsel has prior experience to compare the settlement and it is comparable to other settlements of these types of claims. Under the proposed terms, all class members would receive debt forgiveness, all class members would receive a modest payment, and any class members who made payments to Defendant would receive a pro rata share of their money back. The settlement provides significant relief to Utah consumers and should be approved under the Tenth Circuit's *Jones* factors. *See Tennille*, 785 F.3d at 434.

### Rule 23(e)(1)(B) Factors

Although the prevailing approach in the Tenth Circuit appears to be application of the *Jones* factors, and particularly in light of the uncertainty over the extent to which recent amendments to Rule 23 supersede the *Jones* factors,[5] the parties also address the factors set out in Rule 23(e)(2). However, as this Court observed, the factors are "similar in substance to the Tenth Circuit test," and the parties will not belabor those factors that are substantively identical to the *Jones* factors.

There are four factors, and several subfactors, the Court must consider under Rule 23(e)(2) in determining whether a settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;

---

[5] *See Wells v. Best Buy Co. (In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.)*, No. 20-6097, 2021 U.S. App. LEXIS 13620, at *19 (10th Cir. May 7, 2021) (recognizing both Rule 23(e)(2) and *Jones* factors).

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Each of these requirements is met here.

> i.    *Whether the class representatives and class counsel have adequately represented the class.*

"Th[is] first factor focuses 'on the actual performance of counsel acting on behalf of the class.'" *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 U.S. Dist. LEXIS 68946, at *10 (D.N.M. Apr. 9, 2021).  But Courts have also "analyzed the adequacy of representation by evaluating adequacy under Rule 23(a)(4)." *Rodriguez v. Hermes Landscaping*, No. 17-2142-JWB-KGG, 2020 U.S. Dist. LEXIS 106819, at *6 (D. Kan. June 18, 2020).

Here, as in *Montgomery*, "the substantial digital and documentary discovery exchanged by the parties and the briefing submitted on the [motion] for summary judgment provided Class Counsel with 'an adequate appreciation of the merits of the case before negotiating.'"  As discussed above, the parties litigated this matter through an early motion for summary judgment on the merits, conducted class discovery and initial discovery on the merits, and argued several of the outstanding legal issues in this case as they related to class certification.  Counsel for Plaintiff accordingly had a thorough understanding of the facts and legal landscape of this matter in mediating and negotiating the Settlement.  And the Court has already concluded that Plaintiff's counsel that negotiated the Settlement have extensive class action litigation experience with consumer protection laws and can adequately represent the Class's interests.  (D.E. 60 at

15

14.)  *See Rodriguez*, 2020 U.S. Dist. LEXIS 106819 at *6 (crediting finding of adequacy under

Rule 23(a)(4) in considering adequacy of representation under Rule 23(e)(2)(A).

> ii.    *Whether the proposal was negotiated at arm's length.*

This factor essentially subsumes the "fair and honest negotiation requirement", *id.* at *7,

and is satisfied for the same reasons discussed with respect to that factor, which the parties

incorporate here by reference.  As in *Montgomery*, "the settlement was negotiated at arm's length

after prolonged settlement negotiations—including a full day mediation session with an

experienced . . . mediator." 2021 U.S. Dist. LEXIS 68946, at *12.  "The assistance of an

experienced mediator in the settlement process confirms that the settlement is non-collusive."

*Sandoval v. Tharaldson Employee Mgmt., Inc.*, 2010 U.S. Dist. LEXIS 69799, 2010 WL

2486346, at *6 (C.D. Cal. June 15, 2010); *Milliron v. T-Mobile USA, Inc.*, 2009 U.S. Dist.

LEXIS 101201, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an

independent mediator in settlement negotiation virtually insures that the negotiations were

conducted at arm's length and without collusion between the parties.")

> iii.   *Whether the relief provided for the class is adequate, taking into account the*
> *costs, risks, and delay of trial and appeal.*

This factor "recognizes that while the 'relief that the settlement is expected to provide to

class members is a central concern,' such relief must be viewed in relation to 'the cost and risk

involved in pursuing a litigated outcome.'" *Montgomery*, 2021 U.S. Dist. LEXIS 68946, at *12

(quoting Fed. R. Civ. P. 23 advisory committee notes).  This factor essentially subsumes the

*Jones* factors of "whether serious questions of law and fact exist, placing the ultimate outcome of

the litigation in doubt" and "whether the value of an immediate recovery outweighs the mere

possibility of future relief after protracted and expensive litigation," *Rodriguez*, 2020 U.S. Dist.

16

LEXIS 106819, at *7-8, and is satisfied for the reasons set forth in the discussion of those factors above, which the parties incorporate here by reference.

> iv. *Whether the relief provided for the class is adequate, taking into account the effectiveness of any proposed method of distributing relief to the class including the method of processing class-member claims if required.*
> .

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." *Montgomery*, 2021 U.S. Dist. LEXIS 68946, at *14 (quoting Fed. R. Civ. P. 23 advisory committee notes). Here, the Settlement does not contemplate any claims process, as the Class members can all be individually identified from First Financial's records. No action will be required of any Class member to receive the benefits of the Settlement.

Notice of the Settlement shall be provided to each of the Class members by first-class mail to the last-known address on file with First Financial. (Settlement at 14, 4 (defining "Accessible Contact Information")).

Relief from the approximately $1.8 million in judgments against Class members requires no distribution to Class members, and is essentially automatic upon cessation of First Financial's collection efforts. Indeed, First Financial has already directed collections on the affected judgments to cease as of January 29, 2021 as set forth in the Settlement. Accordingly, no action by any Class member is required to receive this significant benefit of the Settlement.

With respect to distribution of the Common Fund, distribution of those funds to Class members shall be made on a pro rata basis, based on the amount paid by Class members to First Financial. (Settlement at 10.) As these amounts can be determined for each Class member from First Financial's records, no claim from the Class member is necessary. Payment shall be made

by check valid for 120 days.  Any residual funds, including uncashed checks, shall revert to the Common Fund and be dispersed *cy pres* subject to the Court's supervision.

Administering the Class notice and distributing relief by mail to last-known address "constitute[s] the best notice practicable under the circumstances, and complie[s] with the requirements of the Federal Rules of Civil Procedure and due process."  *Montgomery*, 2021 U.S. Dist. LEXIS 68946, at *15; *see also Montgomery v. Cont'l Intermodal Grp.-Trucking Llc*, No. 19-940 MV/GJF, 2020 U.S. Dist. LEXIS 191157, at *5 (D.N.M. Oct. 15, 2020) (approving notice by mail to last-known address as the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort").

Moreover, because the parties here are seeking preliminary, pre-notice approval of the settlement agreement, the Court will have the opportunity to supervise the notice and claims procedure and make a final determination as to the notice and distribution procedures actually implemented prior to final approval of the Settlement.

> v.   *Whether the relief provided for the class is adequate, taking into account the terms of any proposed award of attorney's fees, including the timing of payment.*

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement."  *Montgomery*, 2021 U.S. Dist. LEXIS 68946, at *18.  Here, the Settlement contemplates that attorney fees shall be paid from the Common Fund as awarded by the Court.  Accordingly, the Court will have an opportunity to assess the reasonableness of any attorney fee request in ration with the adequacy of the relief provided the class in evaluating an application for attorney fees by Plaintiff's counsel.

vi.    *Whether the relief provided for the class is adequate, taking into account any agreement required to be identified under Rule 23(e)(3).*

"Under this factor, the parties are required to 'file a statement identifying any agreement made in connection with the proposal.'" *Montgomery*, 2021 U.S. Dist. LEXIS 68946, at *20. The Settlement is the only agreement between the parties made in connection with the proposal. Accordingly, this factor is satisfied. *Id*. ("[T]his factor is satisfied because the parties have filed the Settlement Agreement and have represented that there is no other agreement between them.")

vii.    *Whether the proposal treats class members equitably relative to each other.*

"The final factor seeks to prevent the 'inequitable treatment of some class members vis-a-vis others.'" *Montgomery*, 2021 U.S. Dist. LEXIS 68946, at *20-21 (quoting Fed R. Civ. P. 23 advisory committed notes). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id*.

Here, every class member is entitled to relief from any effort by First Financial to collect a judgment entered against them based on a lawsuit filed prior to December 4, 2018, the date that First Financial registered under the Registration Statute. Thus, although some Class members never had judgments entered against them, and others were subject to lawsuits filed after December 4, 2018, all Class members are ultimately similarly situated because no Class member will be subject to collection of a judgment based on a lawsuit filed while First Financial was not registered.

With respect to distribution of the Common Fund, the Settlement contemplates a pro rata distribution based on amounts collected by or paid to First Financial while not registered. Such an approach "takes appropriate account of differences among [Class members'] claims," because

it provides greater relief Class members who arguably suffered greater harm as a result of First Financial's collection efforts while not registered.

Last, the Settlement provides for an incentive payment to be paid to Plaintiff in an amount allowed by the Court. "When a service award 'perform[s] the legitimate function of encouraging individuals to undertake the frequently onerous responsibility of [serving as the] named class representative' additional money awards are reasonable". *Rodriguez*, 2020 U.S. Dist. LEXIS 106819, at *10. Here, the Court will determine any incentive payment to Plaintiff, and will be able to ensure that such an award is reasonable and legitimate.

For the foregoing reasons, the Settlement satisfies both the requirements of Rule 23(e)(2) and the factors considered by the Tenth Circuit in evaluating class settlement agreements. The Settlement should be given preliminary approval by this Court subject to any objections and final approval at a fairness hearing.

### The Class Notice should be Approved.

To implement the settlement, a notice must be sent to class members. A proposed class notice is submitted as Exhibit B. It includes all of the information required under Federal Rule of Civil Procedure 23(e)(1). Once the Court approves it and provides a date and time for a final fairness hearing, the missing dates can be filled in and mailed to each class member.

## <u>CONCLUSION</u>

The proposed classes meet all the requirements of Rule 23 to be certified as a class.  The proposed amended classes are appropriate in light of the settlement and should be approved under Rule 23(e).

DATED this May 20, 2021.

BACZYNSKI LAW, PLLC

/s/    Daniel Baczynski
Attorneys for Plaintiff and Class


BALLARD SPAHR, LLP

/s/    Nathan Marigoni
Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this May <u>20</u>, 2021, I caused a true and correct copy of

**PLAINTIFF'S SECOND STIULATED MOTION TO AMEND CLASSES CERTIFED BY**

**THE COURT TO SETTLEMENT CLASSES AND PROVIDE FOR NOTICE TO CLASS**

**MEMBERS** was served on all parties of record through the ECF system as follows:

Melanie J. Vartabedian, Esq. (#10148)
Tyler M. Hawkins, Esq. (#13234)
BALLARD SPAHR LLP
One Utah Center, Suite 800
201 S. Main Street
Salt Lake City, Utah 84111-2221

_/s/_     Daniel Baczynski