IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRYSTAL LAWRENCE,<br><br>    On behalf of Plaintiff and Class,<br><br>v.<br><br>FIRST FINANCIAL INVESTMENT FUND V, LLC,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING SECOND STIPULATED MOTION TO AMEND CLASSES CERTIFIED BY THE COURT TO SETTLEMENT CLASSES AND PROVIDE NOTICE TO CLASS MEMBERS**<br><br>Case No. 2:19-cv-00174-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

    Plaintiff Crystal Lawrence initiated this action against First Financial Investment Fund V, LLC (First Financial), alleging violations of the Fair Debt Collection Practices Act (FDCA) and the Utah Consumer Sales Protection Act (UCSPA).[1] In August 2020, the court certified two classes (Order Certifying Class) for the case to proceed as a class action against First Financial.[2] Since then, the parties have engaged in negotiations and reached an agreement to settle this action on a class basis (Settlement).[3] The parties filed their Stipulated Motion to Amend Classes Certified by the Court to Settlement Classes and Provide for Notice to Class Members (First Stipulated Motion),[4] but the court denied it for lack of adequate analysis as to the fairness and reasonableness of the Settlement.[5]

---

[1] Dkt. 2-2 (Complaint).

[2] Dkt. 60 (Order Certifying Class).

[3] Dkt. 67 (First Stipulated Motion) at 1.

[4] *Id.*

[5] Dkt. 70 (Prior Order).

Now before the court is the parties' Second Stipulated Motion to Amend Classes Certified by the Court to Settlement Classes and Provide for Notice to Class Members (Second Stipulated Motion),[6] pursuant to Federal Rule of Civil Procedure 23. Providing additional analysis, the parties now move the court to amend the previously-certified classes into settlement classes, grant preliminary approval of the proposed settlement, and provide for notice to be sent to class members.[7] For the reasons stated below, the Second Stipulated Motion is GRANTED.

## BACKGROUND

First Financial's business is to purchase defaulted third-party debts and then pursue collection of those debts for its own benefit.[8] After Lawrence defaulted on a medical debt, First Financial acquired her account and filed a debt collection action against her.[9] In September 2018, First Financial obtained a judgment against Lawrence for $2,492.17.[10] But First Financial was not registered as a debt collection agency in Utah when it filed that action.[11]

Lawrence filed a Complaint against First Financial in February 2019.[12] In it, she alleged First Financial violated the FDCPA and UCSPA because when it commenced its collection action against her, First Financial was not a registered debt collector as required by Utah Code

---

[6] Dkt. 71 (Second Stipulated Motion).

[7] *Id.* at 1–2.

[8] Dkt. 42.

[9] *Id.*

[10] *Id.* at 3.

[11] *Id.* at 2–3.

[12] *See* Dkt. 2-2 (Complaint). Lawrence originally filed her Complaint in Utah state court, but First Financial removed the action to this court in March 2019. *See* Dkt. 2.

Annotated § 12-1-1 (the Registration Statute).[13] Lawrence brought her claims against First Financial individually and on behalf of an FDCPA Class and a UCSPA Class.[14]

In April 2019, First Financial moved for summary judgment on Lawrence's claims.[15] First Financial argued the claims fail because it is not an entity to which the Registration Statute applies.[16] The court disagreed, and denied First Financial's Motion.[17] Specifically, the court concluded the Registration Statute and the requirement of registration for debt collectors applies to First Financial.[18]

In August 2020, the court certified Lawrence's proposed FDCPA Class and UCSPA Class.[19] The FDCPA and UCSPA Classes were certified and defined as follows:

1. The FDCPA Class shall consist of all individuals against whom First Financial filed a debt collection lawsuit in Utah to collect a "debt" as defined by 15 U.S.C. 1692a(5), while First Financial was unlicensed as a debt collector in Utah, and where the lawsuit was filed within the one (1) year period immediately preceding February 5, 2019.

2. The UCSPA Class shall consist of all individuals against whom First Financial filed a debt collection lawsuit in Utah to collect a debt incurred in connection with a "consumer transaction" as defined by Utah Code Ann. § 13-11-3(2), while First Financial was unlicensed as a debt collector in Utah, and where the lawsuit was filed within the four (4) year period immediately preceding February 5, 2019.

These classes allegedly consist of more than 1,767 debtors.[20]

---

[13] Dkt. 2-2 (Complaint) ¶¶ 27–42.

[14] *Id.* ¶¶ 43–45.

[15] *See* Dkt. 16.

[16] *See id.* at 2–3.

[17] *See* Dkt. 56 at 25.

[18] *Id.* at 21.

[19] Dkt. 60.

[20] Dkt. 42 at 3.

After the court certified the classes, the parties engaged in settlement negotiations over many days.[21] With the assistance of Nate Alder, a third-party mediator, they reached an agreement to settle this action on a class basis.[22] Lawrence then filed her First Stipulated Motion, which the court denied because the parties did not provide sufficient analysis under Federal Rule of Civil Procedure 23(e)(2) and did not address the Tenth Circuit's factors for evaluating the fairness and reasonableness of a settlement proposal.[23] Following the court's guidance, Lawrence filed her Second Stipulated Motion with a complete analysis of each.[24]

## LEGAL STANDARD

The settlement of a class action suit may only occur with the court's approval and is governed by Rule 23(e). Pursuant to Rule 23(e)(1)(B), the court will provide for notice of the proposed settlement to be sent to class members only if the parties show "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."[25] The district court's "independent obligation to conduct a 'rigorous analysis' before concluding that Rule 23's requirements have been satisfied"[26] persists even when the parties stipulate for purposes of settlement.[27]

The second prong of Rule 23(e)(1)(B)—that the court will likely be able to certify the class for purposes of judgment on the proposal—is satisfied here because the parties seek

---

[21] Dkt. 67 (First Stipulated Motion) at 1–2.

[22] *Id.*

[23] Dkt. 70 (Prior Order).

[24] Dkt. 71 (Second Stipulated Motion).

[25] Fed. R. Civ. P. 23(e).

[26] *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013).

[27] *See Harper v. C.R. England*, Inc., 746 F. App'x 712 (10th Cir. 2018) (vacating and remanding "for the district court to more meaningfully explain its bases for class certification" where the parties had jointly sought and received certification for settlement purposes).

certification for settlement classes identical to those certified previously.[28] In its Order Certifying Class, the court engaged in a detailed analysis of the Rule 23(a) and (b)(3) standards for class certification and concluded the standards were met.[29] The court incorporates by reference that analysis and reasoning to find the parties have satisfied this requirement.

To satisfy the first requirement of Rule 23(e)(1)(B), the parties must show that the court will likely be able to approve the proposed settlement as "fair, reasonable, and adequate" under Rule 23(e)(2). In 1984, the Tenth Circuit instructed district courts making this determination to consider whether "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable."[30]

In addition to the Tenth Circuit test, Rule 23(e)(2) was amended in 2018 to include a separate but related set of factors.[31] Under Rule 23(e)(2), the court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment;
    (iv) any agreement required to be identified under Rule 23(e)(3); and

---

[28] *See* Fed. R. Civ. P. 23(e)(1) advisory committee's note to the 2018 amendments ("If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified[.]").

[29] Dkt. 60 (Order Certifying Class); *see also Harper*, 746 F. App'x at 720 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. at 621) ("[The] specifications of [Rules 23(a) and (b)] . . . demand undiluted, even heightened, attention in the settlement context."). Analysis of subsection (b)(3)(D), however, is not necessary in the settlement context. *Amchem*, 521 U.S. at 620.

[30] *Tennille v. Western Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (citation omitted); *see also Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

[31] *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to the 2018 amendments.

(D) the proposal treats class members equitably relative to each other.

These Rule 23(e)(2) factors are similar in substance to the Tenth Circuit test. While the advisory committee notes indicate "the goal of the amendment is not to displace any factor, but rather focus the court" on core concerns of procedure and substance,[32] this has led some to question whether the factors in the Rule supersede the pre-existing Tenth Circuit factors.[33] However, the Tenth Circuit has continued to apply its own test in at least one recent unpublished case.[34] For this reason, the court ordered the parties to address both sets of factors to satisfy the requirements under the first prong of Rule 23(e)(1)(B).[35]

## ANALYSIS

The parties seek certification of the identified classes as settlement classes under Rule 23 and preliminary approval of the Settlement for purposes of sending notice to class members.[36] Having already demonstrated compliance with Rule 23's other requirements, they now argue the Settlement satisfies Rule 23(e)(1)(B)(i) as fair, adequate, and reasonable under both the Tenth Circuit and Rule 23(e)(2) factors.[37] The court addresses each in turn.

---

[32] *Id.*

[33] *See Chavez Rodriguez v. Hermes Landscaping*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. Jun. 18, 2020) (discussing the 2018 amendments and applying both sets of factors); *Cisneros v. EP Wrap-It Insulation, LLC*, 2021WL 2953117, at *6 (D.N.M. Jul. 14, 2021) (discussing the 2018 amendments and applying the Rule 23(e)(2) factors).

[34] *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752 (10th Cir. 2020) (unpublished).

[35] *See Gradie v. C.R. England, Inc.*, No. 2:16-cv-00768-DN, 2020 WL 6827783, at *9, *13, and *13 n.88 (D. Utah Nov. 20, 2020) (applying both the Tenth Circuit and Rule 23(e)(2) factors); *see also* Dkt. 70 (Prior Order) at 3–4.

[36] *See* Dkt. 71 (Second Stipulated Motion) at 2.

[37] *Id.*

### I. The Settlement is Fair and Reasonable Under the Tenth Circuit Factors

#### *A. The Settlement was Fairly and Honestly Negotiated*

District courts within the Tenth Circuit have found settlements to be fairly and honestly negotiated where parties have vigorously advocated their positions[38] and where a settlement was reached through arms-length negotiations.[39] Each indicia of a fair and honest negotiation is present here. After two-and-a-half years of litigation, the parties have briefed and argued a motion for summary judgment and a motion for class certification.[40] Lawrence has completed class discovery, including manual review of each debt collection action filed by First Financial, and commenced merits discovery.[41] Finally, in December 2020, the parties engaged in all-day mediation before an experienced mediator, eventually negotiating a settlement agreement.[42] These facts strongly support a finding that the settlement was reached through arms-length negotiations and vigorous advocacy. Accordingly, this factor weighs in favor of finding the Settlement is fair and reasonable.

#### *B. Serious Questions of Law Exist, Placing the Outcome of the Litigation in Doubt*

The parties identify several questions of law placing the outcome of the litigation in doubt. First, courts in this district have dismissed claims similar to Lawrence's, finding

---

[38] *See In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1241 (D.N.M. 2012); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1260 (D. Kan. 2006); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997).

[39] *See Cazeau v. TPUSA, Inc.*, No. 2:18-cv-00321-RJS-CMR, 2021 WL 1688540, at *5 (D. Utah Apr. 29, 2021); *In re Thornburg*, 912 F. Supp. 2d at 1241; *In re Sprint Corp*, 443 F. Supp. 2d at 1260; *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

[40] Dkt. 71 (Second Stipulated Motion) at 6.

[41] *Id.*

[42] *Id.* at 7.

unlicensed debt collection alone does not constitute a violation of the UCSPA.[43] These cases go to the merits of Lawrence's claims and make an appeal likely were she to obtain any significant judgment against First Financial at trial. Second, based on the Supreme Court's reasoning in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, the parties dispute whether Federal Rule of Civil Procedure 23 supersedes a Utah prohibition on recovery of damages in a class action.[44] If this question were resolved against Lawrence, her recovery on behalf of the class would be limited to less than the amount agreed to in the Settlement.[45] Third, Lawrence seeks a ruling from the federal court that collection judgments are unenforceable, raising questions under the *Rooker-Feldman* doctrine as to this court's ability to vacate or void state court judgments.[46] Again, a ruling against Lawrence on this question would significantly harm the class members' potential relief. For these reasons, this factor also weighs in favor of the Settlement's fairness and reasonableness.

### C. *The Value of Immediate Recovery Outweighs the Mere Possibility of a More Favorable Outcome After Further Litigation*

For multiple reasons, the immediate recovery available through the Settlement outweighs the possibility of a more favorable outcome after further litigation. First, given the nature of this case, the novelty of legal issues involved, and the likelihood of appeal, any future resolution would almost certainly be years down the road.[47] During that time, consumers may be subject to further collection without any guarantee of relief, especially given the potential legal challenges

---

[43] *McMurray v. Forsythe Fin., LLC*, No. 1:20-CV-8 TS, 2021 WL 83265, at *2–3 (D. Utah Jan. 11, 2021); *Buhler v. BCG Equities, LLC*, No. 2:19-CV-00814-DAK, 2020 WL 888733, at *4–5 (D. Utah Feb. 24, 2020), *reconsideration denied*, No. 2:19-cv-00814-DAK, 2020 WL 2085247 (D. Utah Apr. 30, 2020).

[44] 559 U.S. 393 (2010); Dkt. 71 (Second Stipulated Motion) at 9.

[45] Dkt. 71 (Second Stipulated Motion) at 9.

[46] *Id.* at 10.

[47] *Id.* at 10–13.

should this case go to trial.[48] These issues are further compounded by the limited availability of jury trials due to the ongoing COVID-19 pandemic.[49]

Second, the Settlement provides for relief that may be significantly curtailed or even eliminated in the future depending on the outcome of similar cases now on appeal.[50] Cases currently on appeal before the Tenth Circuit and the Utah Court of Appeals could negatively impact the viability of the class members' claims under the UCSPA.[51] Additionally, the amount of potential relief available to class members depends on how a court would analyze the UCSPA's class-damages prohibition under *Shady Grove* and subsequent Tenth Circuit precedent, an issue likely to be appealed regardless of the outcome.[52]

In view of these risks, the current Settlement provides significant and immediate value to class members. First Financial will forbear collecting outstanding judgments against class members, amounting to around $1.8 million in debt relief, and agrees not to assign these judgments except for purposes of debt abolishment or extinguishment.[53] This relief, which may not be available under the UCSPA or he FDCPA, shields class members from future recovery attempts for these debts.[54] The Settlement also provides for a common class fund of $230,000 (Common Fund) for disbursement to class members and payment of attorneys' fees and costs.[55]

---

[48] *Id.* at 11.

[49] *Id.* at 10–11.

[50] *Id.* at 12–13 (citing *McMurray v. Forsythe Finance*, No. 21-4014 (10th Cir. filed Feb. 4, 2021) and *Haskell v. Wakefield & Associates, Inc.*, No. 20200412 (Utah Ct. App. filed May 5, 2020)).

[51] Dkt. 71 (Second Stipulated Motion) at 12–13.

[52] *Id.* at 13.

[53] *Id.* at 11; Dkt. 71-1 (Settlement) at 8–9.

[54] Dkt. 71 (Second Stipulated Motion) at 11.

[55] Dkt. 71-1 (Settlement) at 8–11.

Given the uncertainty of future relief available after further litigation, this factor weighs in favor of the fairness of the Settlement.

### D. *The Parties Believe the Settlement is Fair and Reasonable*

The judgment of the parties favors a finding that the Settlement is fair and reasonable. Counsel for both sides were present for settlement negotiations, as well as First Financial's general counsel and Chief Compliance Officer.[56] Lawrence and her counsel have discussed the Settlement and believe all terms are fair and reasonable, and First Financial's general counsel participated in the mediation, negotiation, and approval of the Settlement.[57] Thus, this factor weighs in favor of the Settlement's fairness.

The court concludes each Tenth Circuit factor supports a finding that the Settlement is fair and reasonable. Although there is significant overlap between the Tenth Circuit factors and Rule 23(e)(2), the court now turns to the Rule 23(e)(2) factors.

## II. The Settlement is Fair and Reasonable Under the Rule 23(e)(2) Factors

### A. *The Class Representatives and Class Counsel Have Adequately Represented the Class*

The first factor focuses "on the actual performance of counsel acting on behalf of the class."[58] Here, class counsel has adequately represented the class. Class counsel has gained appreciation for the merits of the case through substantial digital discovery and briefing a motion for summary judgment.[59] Counsel successfully defended against the motion for summary

---

[56] *Id.* at 13–14.

[57] *Id.*

[58] Fed. R. Civ. P. 23(e)(2) advisory committee's note to the 2018 amendments; *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *4 (D.N.M. Apr. 9, 2021).

[59] Dkt. 71 (Second Stipulated Motion) at 15.

judgment[60] and argued several legal issues related to class certification.[61] This all took place before settlement discussions, providing counsel with a thorough understanding of the case while participating in negotiations.[62]

Courts have also analyzed the adequacy of representation under Rule 23(a)(4).[63] In its Order Certify Class,[64] the court found Lawrence and class counsel adequately represented the class under Rule 23(a)(4).[65] That analysis is incorporated here by reference to the extent it bears on Rule 23(e)(2)'s adequacy determination. For these reasons, this factor weighs in favor of the Settlement's fairness.

### B. *The Settlement Was Negotiated at Arm's Length*

The Settlement was negotiated at arm's length. This factor overlaps with the Tenth Circuit factor asking whether the Settlement was fairly and honestly negotiated. As discussed previously, this factor is satisfied.

### C. *The Relief Provided for the Class is Adequate*

i. <u>Costs, Risks, and Delay of Trial and Appeal</u>

The relief provided for the class by the Settlement is adequate given the costs, risks, and delay of trial and appeal. This factor is substantially similar to the second and third Tenth Circuit factors asking whether serious questions of fact exist, placing the ultimate outcome of the litigation in doubt, and whether the value of an immediate recovery outweighs the mere

---

[60] Dkt. 56.

[61] *Id.*

[62] *Id.*

[63] *Chavez Rodriguez*, 2020 WL 3288059, at *2.

[64] Dkt. 60 (Order Certifying Class).

[65] *Id.* at 13–21.

possibility of future relief after protracted and expensive litigation.[66] The court's earlier analysis of those factors is equally applicable here and is incorporated by reference. Thus, this factor also weighs in favor of the Settlement's fairness and reasonableness.

    ii.    <u>Effectiveness of the Method of Distributing Relief to the Class, Including the Method of Processing Class-Members Claims</u>

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding."[67]

Here, the method of distributing relief to the class is sufficiently effective and no claims process is required. Because the class members can be individually identified from First Financial's records, no action is required of any class member to receive the benefits of the Settlement.[68] As the parties describe in their Second Stipulated Motion, relief from the approximately $1.8 million in judgments against class members is essentially automatic upon cessation of First Financial's collection efforts.[69] Distribution from the Common Fund will be made to class members on a pro rata basis based on the amount paid by class members to First Financial and can be determined for each class member from First Financial's records.[70] Payment will be made by checks valid for 120 days, with any residual or uncashed funds reverting to the Common Fund to be dispersed *cy pres* subject to the court's supervision.[71] Administering notice to the class will be done using first-class mail to the last-known address of

---

[66] *Tennille*, 785 F.3d at 434.

[67] *Montgomery*, 2021 WL 1339305, at *14 (quoting Fed. R. Civ. P. 23 advisory committee's notes).

[68] Dkt. 71 (Second Stipulated Motion) at 17.

[69] *Id.*

[70] *Id.*; Dkt. 71-1 (Settlement) at 9–10.

[71] Dkt. 71 (Second Stipulated Motion) at 17–18; Dkt. 71-1 (Settlement) at 10.

each class member.[72] This "complies with the requirements of the Federal Rules of Procedure and due process."[73]

For these reasons, the method of distribution and related processes laid out in the Settlement are fair and reasonable.

    iii.    <u>Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment</u>

Because the Settlement specifies that attorney's fees will be paid from the Common Fund and subject to court approval, the court will have an opportunity to assess the reasonableness of any fees at the time Lawrence's counsel seeks approval of such fees from the court.

    iv.    <u>Any Agreement Required to Be Identified Under Rule 23(e)(3)</u>

This factor requires the parties seeking approval "to file a statement identifying any agreement made in connection with the proposal."[74] Here, the Settlement is the only agreement between the parties made in connection with the proposal.[75] Accordingly, this factor is also satisfied.[76]

    D. *The Settlement Treats Class Members Equitably Relative to Each Other*

"The final factor seeks to prevent 'the inequitable treatment of some class members vis-a-vis others.'"[77] This factor looks to "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."[78]

---

[72] Dkt. 71 (Second Stipulated Motion) at 17; Dkt. 71-1 (Settlement) at 14.

[73] *Montgomery*, 2021 WL 1339305, at *15.

[74] *See* Fed. R. Civ. P. 23(e)(3).

[75] Dkt. 71 (Second Stipulated Motion) at 19.

[76] *Montgomery*, 2021 WL 1339305, at *8 ("[T]his factor is satisfied because the parties have filed the Settlement Agreement and have represented that there is no other agreement between them.").

[77] *Id.* at *20–21 (quoting Fed. R. Civ. P. 23 advisory committee's notes).

[78] *Id.*

Here, the Settlement treats class members equitably relative to each other for multiple reasons. First, all class members are similarly situated by receiving the same form of relief. Specifically, no class member will be subject to collection of a judgment based on a lawsuit filed while First Financial was not registered.[79] Second, distribution of the common fund will happen on a pro rata basis based on amounts collected by or paid to First financial while it was not registered.[80] This appropriately respects differences among class members claims by providing greater relief to class members who suffered greater harm.[81] Third, while the Settlement provides for an incentive payment to the named plaintiff, the court will have an opportunity to ensure it is reasonable and legitimate relative to other class members upon final approval.[82]

For these reasons, the court is satisfied the Settlement treats class members equitably relative to each other.

Having reviewed both the Tenth Circuit and Rule 23(e)(2) factors, the court concludes the Settlement is fair and reasonable. Therefore, the court grants preliminary approval subject to any objections, with final approval to be determined at a fairness hearing.

### III. Class Notice is Approved

The proposed notice satisfies the requirements of Rule 23, including the information required under subsection (e)(1). Having granted preliminary approval of the Settlement, the court approves notice of the Settlement to be sent to class members.

---

[79] Dkt. 71 (Second Stipulated Motion) at 19; *See* Dkt. 71-1 (Settlement) at 8–11.

[80] Dkt. 71 (Second Stipulated Motion) at 19–20; *See* Dkt. 71-1 (Settlement) at 10

[81] Dkt. 71 (Second Stipulated Motion) at 19–20.

[82] *Id.* at 20; *See* Dkt. 71-1 (Settlement) at 10.

## CONCLUSION

For the foregoing reasons, the Second Stipulated Motion[83] is GRANTED. The court hereby ORDERS that:

1. The previously certified classes are amended into settlement classes as defined in the Settlement;

2. The Settlement is granted preliminary approval as fair, reasonable, and adequate;

3. The parties are directed to implement the administration of the Settlement and provide notice to class members;

4. The names of class members who remain part of the Settlement and all timely objections shall be electronically filed with the court no later than three (3) business days from the end of the objection period; and

5. As contemplated by the Settlement, a final fairness hearing is set for January 6, 2022, approximately 120 days after the date of entry of this Order.[84]

SO ORDERED this 26th day of August 2021.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[83] Dkt. 71 (Second Stipulated Motion).

[84] Dkt. 71-1 (Settlement) at 13.