Tyler B. Ayres, Bar No. 9200
AYRES LAW FIRM
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 255-5555
Tyler@AyresLawFirm.com

Daniel Baczynski, Bar No. 15530
BACZYNSKI LAW
(708) 715-2234
Dbaczyn2@gmail.com
Attorneys for Plaintiff (Additional Counsel on Signature Page)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| CRYSTAL LAWRENCE,<br><br>On behalf of Plaintiff and Class,<br><br>vs.<br><br>FIRST FINANCIAL INVESTMENT FUND V, LLC,<br><br>Defendant. | **MOTION FOR FINAL APPROVAL OF A SETTLEMENT CLASS AND MEMORANDUM IN SUPPORT**<br><br>Case No: 2:19-cv-00174<br><br>Judge: Robert Shelby |

Plaintiff Crystal Lawrence (Plaintiff) submits this Motion and Memorandum in support of her Motion for Final Approval of a Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

**I.   Introduction**

The Court previously granted preliminary approval of a Settlement Class between the Plaintiffs and the Defendant, FIRST FINANCIAL INVESTMENT FUND V, LLC, LLC ("First Financial"). (ECF 73) ("Preliminary Approval Order"). The only additional information for the court to consider is that no class member has objected to the settlement or asked to opt out,

1

which indicates support for the settlement by the class members. As shown below, the Court should provide final approval for the class because all of the requirements of Rule 23 have been met and the settlement is fair, adequate and reasonable.

## II.     The Requirements of Rule 23(a) Are Met.

In the prior motion for preliminary approval, and the Court's order granting that motion, the four requirements to Rule 23(a) were addressed.[1] The prior motion and order established the following: The 1,767 class members make joinder impractical and established numerosity; the narrow claims asserted under the Utah Consumer Sales Practices Act and the Fair Debt Collection Practices Act present a common question for the class; and Plaintiff's claims under those laws are typical of the claim of the class. Finally, the adequacy of the Plaintiff as class representative and the adequacy of her counsel as class counsel were also shown.

## III.    The Requirements of Rule 23(b)(3) Are Met.

The prior motion and order also addressed the predominance and superiority requirements of Rule 23(b)(3). The common questions for the class claim are also the predominant questions in this case. The question of whether the Defendant engaged in deceptive and unconscionable acts when it pursued debt collection without first registering as a collection business under Utah Code § 12-1-1 provides an answer to all class members' claims. And there are no individual issues as to damages because all class members are treated the same – all debts as described in paragraph 27a of the Class Action Settlement Agreement and Release will be forgiven and those class members who made payments will share pro rata in the monies that will be paid by Defendant, less any award of an incentive payment and costs and fees for class counsel. Resolving the claims in a single action rather than repetitive actions that present the

---

[1] Plaintiff incorporates by reference the motion for preliminary approval. (ECF 71).

2

same cause of action and request the same damages also establishes the superiority of allowing them to be resolved on a class basis.

### IV. The Class Was Provided Notice.

Pursuant to the Preliminary Approval Order, the settlement administrator sent out the notices approved by the Court to the class members. See Declaration of Settlement Administrator, Exhibit A. The notices were sent by first class mail to the last known address available to First Financial. Out of 1439 letters initial mailed out, roughly half (760) were returned as undelivered. The class administer than searched for updated addresses for all class members whose notices were returned and mailed out new letters. The new letters to 513 of the 760 class members were not returned.

In total, letters were successfully sent to 1,192 class members – representing roughly 82% of the class. Though some notices were ultimately undeliverable to a small percentage of the class members, efforts to provide notice to the class was done in good faith using the best practicable methods under the circumstances. *See Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 U.S. Dist. LEXIS 68946, at *15 (D.N.M. Apr. 9, 2021) (granting final settlement approval and concluding that notice by mail, with returned mail re-sent after searching for updated addresses, constituted "the best notice practicable under the circumstances, and complied with the requirements of the Federal Rules of Civil Procedure and due process").

### V. Class Members Were Provided An Opportunity To Opt Out, But No Class Member Opted Out.

Rule 23 requires any notice to the class members include an opportunity to opt out under 23(c)(2)(B)(v). Notices to all class members were mailed out on October 8th, 2021. The notice

informed the class members of their right to opt out and provided an exclusion deadline of December 7, 2021. No class members have elected to opt out.

## VI.    There Have Been No Objections.

In addition to advising the class members they could opt out, the class members were also advised that they could assert objections to the proposed settlement. Again, notices to all class members were mailed out on October 8th, 2021. The notice informed the class members of their right to object with an objection deadline of December 12, 2021. No class member has objected to the settlement.

## VII.    The Settlement Remains Fair, Adequate and Reasonable.

The settlement meets the four part test under Rule 23 set forth in *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).[2] The settlement was honestly negotiated, at arm's length, and with the use of a neutral mediator. The settlement was reached after extensive litigation including a contested summary judgment motion and class certification request. The settlement provides substantial relief to the class including roughly $1.8 million in debt relief and a pro rata return of a common fund to the 367 class members that paid money to First Financial while unregistered. The settlement gives the above substantial relief, including relief which may not have been available through this litigation.

Considering the settlement, any question over the ultimate outcome of the litigation is not as significant here. However, it is still worth mentioning the risks to the class moving forward

---

[2] The four parts are:
  (1) whether the proposed settlement was fairly and honestly negotiated;
  (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
  (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
  (4) the judgment of the parties that the settlement is fair and reasonable.

without an amicable resolution. Several courts have dismissed similar claims on various grounds including res judicata[3], petition clause[4], and that unregistered collection simply is not deceptive or unconscionable[5]. These cases are on appeal and a negative opinion could torpedo the case. It is likely that any result in favor of the class would be subject to an appeal in light of the above decisions and appeals. Due to the uncertainty involved, an immediate recovery outweighs the potential for a far more favorable outcome in the future.

Consequently, the settlement submitted is fair and reasonable. Moreover, no class member has voiced any objections to the settlement or has opted out of the settlement, further suggesting that the settlement is a just and adequate resolution.

### VIII. The Parties Propose the Cy Pres (if any) should be split between the University of Utah and Brigham Young University.

If any of the settlement funds are not collected by the Class Members, the parties propose the remainder – the cy pres – be split between the law schools for the University of Utah and Brigham Young University of Utah. Both schools offer juris doctor programs and the cy pres will assist them in creating or training more attorneys - thereby increasing the availability of counsel to those in need of representation.

---

[3] *McMurray v. Forsythe Fin., LLC*, No. 1:20-CV-8 TS, 2021 WL 83265, at *2–3 (D. Utah Jan. 11, 2021).

[4] *Holmes v. Crown Asset Mgmt., LLC*, No. 2:19-CV-00758, 2021 WL 3473050, at *1 (D. Utah Aug. 6, 2021).

[5] *Buhler v. BCG Equities, LLC*, No. 2:19-CV-00814-DAK, 2020 WL 888733, at *4–5 (D. Utah Feb. 24, 2020), *reconsideration denied*, No. 2:19-cv-00814-DAK, 2020 WL 2085247 (D. Utah Apr. 30, 2020).

### IX.     The Parties Propose an Incentive Award of $4,500 for the Class Representative.

"At the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class". § 17:3. Rationale for incentive awards, 5 Newberg on Class Actions § 17:3 (5th ed.). These payments, sometimes referred to as incentive awards, work "[1] to compensate class representatives for work done on behalf of the class, [2] to make up for financial or reputational risk undertaken in bringing the action, [3] to recognize their willingness to act as a private attorney general, and [4] incentivize class members to step forward on behalf of the class". *Id.*

The Tenth Circuit has endorsed that class representatives should be compensated for the "time and effort invested in the case", including "monitoring class counsel… keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). This Court has previously recognized that financial risks for fees and costs are also a factor to be considered when evaluating a request for an incentive award. *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2021 WL 1688540, at *7 (D. Utah Apr. 29, 2021). Weighing these factors, courts in the Federal District for Utah have awarded incentive fees varying between $2,500 and $15,000 per class representative.[6]

Here Ms. Lawrence faced risk for fees and costs in bringing her claim. Both the FDCPA and the UCSPA potentially allow defendants to recover attorneys fees and costs. .[7] At the time

---

[6] See *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2021 WL 1688540, at *7 (D. Utah Apr. 29, 2021); *Campbell v. C.R. England, Inc.*, No. 2:13-CV-00262, 2015 WL 5773709, at *8 (D. Utah Sept. 30, 2015); *Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc.*, No. 2:02 CV 950, 2014 WL 3943994, at *2 (D. Utah June 19, 2014)

[7] See Utah Code § 13-11-19(5)(a) ('the court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed if: the consumer complaining of the act or practice that violates this chapter has brought or maintained an action he knew to be

6

she brought her suit, there was no case law on whether the UCAA applies to debt buyers or whether unregistered collection can be considered deceptive or unconscionable. However, shortly after filing, multiple state courts dismissed identical cases on various grounds.[8] Upon prevailing, one debt collector requested fees and costs of over $38,000 on the grounds the case was filed in bad faith.[9] Counsel kept Ms. Lawrence up-to-date on these cases and the risks inherent in continued litigation and Ms. Lawrence elected to proceed with the case despite the potential for negative repercussions.

Additionally, Ms. Lawrence spent time monitoring the case and assisting when needed. Counsel had frequently phone calls with Ms. Lawrence regarding the status of litigation. *Id*. Ms. Lawrence guided major decisions in the near three-year litigation and assisted in drafting her declaration in support of the motion for class certification. *Id*. Plaintiff was also intimately resolved in settling the matter and participated in the mediation. *Id*. Given the risks and her time and effort, the parties propose an incentive award of $4,500 for Ms. Lawrence to be reasonable.

### X. Attorneys Fees, Litigation Costs, and Administration Fees.

The Parties also propose that Attorneys Fees, Litigation Costs, and Administration Fees be paid out of the Common Fund. These specific requests are briefed in full in a separate motion for fees and costs.

---

groundless")15 U.S.C. § 1692l(a)(3) (On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs).

[8] See Exhibit B and C.

[9] See Exhibit D.

## XI. CONCLUSION

For the above reasons, the Plaintiff requests that the Court enter an Order finally approving the class settlement.

DATED this December 23, 2021.

**BACZYNSKI LAW, PLLC**

/s/ Daniel Baczynski
Counsel for Class and Plaintiff

Scott C. Borison (Pro Hac Vice_
Borison Firm LLC.
1400 S. Charles St.
Baltimore MD 21230
scott@borisonfirm.com

## CERTIFICATE OF SERVICE

I certify that on this December 23, 2021, I caused a true and correct copy of

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF A SETTLEMENT CLASS** was

served on all parties of record through the ECF system as follows:

Melanie J. Vartabedian
Nathan Marigoni
BALLARD SPAHR LLP
One Utah Center, Suite 800
201 S. Main Street
Salt Lake City, Utah 84111-2221


　　　　　　　　　　　　　　　　　　　　　　　*/s/*     Daniel Baczynski