IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRYSTAL LAWRENCE,<br><br>    On behalf of Plaintiff and Class,<br><br>v.<br><br>FIRST FINANCIAL INVESTMENT FUND V, LLC,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS**<br><br>Case No. 2:19-cv-00174-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

Before the court is Plaintiff Christine Lawrence's Motion for Approval of Attorneys' Fees, Litigation Costs, and Administrative Costs.[1]  The court held a hearing in this case on January 6, 2022, at which time it granted Plaintiff's Motion for Final Approval of Class Settlement.[2]  During that hearing, Defendant First Financial Investment Fund V, LLC indicated it would not be opposing Lawrence's forthcoming requests for attorneys' fees and costs, as long as they were reasonable.[3]  To date, no opposition has been filed.  For the reasons explained below, the court finds Lawrence's requests to be reasonable and therefore GRANTS the Motion.

## BACKGROUND

Lawrence initiated this action against First Financial in March 2019, alleging violations of the Fair Debt Collection Practices Act (FDCA) and the Utah Consumer Sales Protection Act

---

[1] Dkt. 82.

[2] Dkt. 84 (Minute Order for Jan. 6, 2022 Hearing); *see* Dkt. 80 (Motion for Final Approval of Settlement Class and Memorandum in Support).

[3] *See* Dkt. 84.

(UCSPA).[4]  In August 2020, this court certified two classes for the case to proceed as a class

action against First Financial.[5]  The parties engaged in negotiations and ultimately reached an

agreement to settle this action on a class basis, and moved the court to amend the certified

classes into settlement classes.[6]  That motion was denied without prejudice for lacking adequate

analysis on the fairness and reasonableness of the settlement under Federal Rule of Civil

Procedure 23.[7]  Lawrence then filed a second motion to amend the certified classes into

settlement classes and notify the class members of the settlement,[8] which the court granted on

August 26, 2021.[9]

In December 2021, Lawrence filed a Motion for Final Approval of Class Settlement,[10]

and in January 2022 she filed a Motion for Approval of Attorneys' Fees, Litigation Costs, and

Administrative Costs (Motion for Fees and Costs).[11]  The court held a hearing on January 6,

2022, at which time it granted the Motion for Final Approval of Class Settlement, but informed

the parties that it would take up the Motion for Fees and Costs at a later date.[12]

Upon reviewing the Motion for Fees and Costs, the court discovered a discrepancy in the

amount Lawrence was requesting.  Specifically, the Motion identified three different figures that

---

[4] Dkt. 2-2 (Complaint).

[5] Dkt. 60 (Order Certifying Class).

[6] Dkt. 67 (First Stipulated Motion to Amend Classes Certified by the Court to Settlement Classes and Provide for Notice to Class Members) at 1–2; *see* Dkt. 67-1 (Settlement Agreement).

[7] Dkt. 70 (Order Denying First Stipulated Motion).

[8] Dkt. 71 (Second Stipulated Motion).

[9] Dkt. 73 (Order Granting Second Stipulated Motion).

[10] Dkt. 80.

[11] Dkt. 82.

[12] Dkt. 84.

2

Lawrence sought as compensation for attorneys' fees.[13]  Accordingly, the court issued an order

on February 17, 2022 seeking additional clarification from Lawrence as to the exact amount of

attorneys' fees being sought.[14]  On February 23, Lawrence filed a response clarifying that she is

requesting $130,000 in attorneys' fees, which is roughly 6.4% of the total settlement value.[15]

## LEGAL STANDARD

When facing a request for attorneys' fees after a class action settlement has been reached,

the "ultimate standard" is whether the amount requested is "reasonable."[16]  Courts in the Tenth

Circuit apply one of two methods in assessing whether the requested fee award is reasonable: the

"lodestar approach," and the "percentage-of-the-fund method, which awards class counsel a

share for the benefit achieved for the class."[17]  The latter is the "preferred method" in this

Circuit,[18] and the lens through which Lawrence presents her fee request to this court.[19]

The Tenth Circuit has adopted the twelve *Johnson* factors as the appropriate test for

courts to apply when assessing the appropriate percentage of the common fund.[20]

> The twelve *Johnson* factors are: (1) the time and labor required, (2) the novelty and
> difficulty of the questions presented by the litigation, (3) the skill required to
> perform the legal services properly, (4) the preclusion of other employment by the
> attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee
> is fixed or contingent, (7) time limitations imposed by the client or the
> circumstances, (8) the amount in controversy and the results obtained, (9) the
> experience, reputation and ability of the attorneys, (10) the undesirability of the

---

[13] *Compare* Dkt. 82 at 2 (requesting an amount totaling "6% of the total value of the settlement," which consists of a $230,000 common fund and $1.8 million in forgiven debt; 6% of the total of those amounts equates to $121,800), *with id.* (requesting $130,000), *and id.* at 5 (requesting $135,000).

[14] Dkt. 85 (Docket Text Order requesting response from Plaintiff Crystal Lawrence re: Dkt. 82).

[15] Dkt. 86 (Clarification to Motion for Approval of Attorneys' Fees, Litigation Costs, and Administrative Costs) at 1.

[16] *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 861 F.3d 1182, 1189 (10th Cir. 2017).

[17] *Id.* at 1185–86.

[18] *Id.* at 1186 (citation omitted).

[19] Dkt. 82 at 2–3.

[20] *Chieftain Royalty*, 861 F.3d at 1185–86 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Gottlieb v. Barry*, 43 F.3d 474, 482 & n.4 (10th Cir. 1994) (adopting the *Johnson* factors).

3

case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[21]

As Lawrence recognizes, "rarely are all of the *Johnson* factors applicable."[22]  Accordingly, as is common practice, this court will refrain from addressing all twelve and will instead analyze each factor it finds to be relevant in determining whether the requested percentage is reasonable.[23]

## ANALYSIS

### I.        Attorneys' Fees

Lawrence requests an award of $130,000 in attorneys' fees, or approximately 6.4% of the total settlement value.[24]  She contends awarding this percentage is appropriate based on a weighing of the relevant *Johnson* factors.[25]  After considering the following factors, the court agrees and finds Lawrence's fees request reasonable.

First, regarding the time and labor involved, Lawrence avers her counsel collectively spent 190 hours litigating this case.[26]  She characterizes the case as "heavily litigated," pointing to the multiple discovery motions, First Financial's summary judgment motion, her class certification motion, and the significant time the parties spent in settlement negotiations, including a full day of mediation.[27]  The court agrees that the time and labor counsel have spent on this case supports the fee award.

---

[21] *White Family Minerals v. Eog Res.*, No. 19-cv-409-KEW, 2021 U.S. Dist. LEXIS 249310, at *9–10 (E.D. Okla. Nov. 12, 2021) (citing *Gottlieb*, 43 F.3d at 482); *accord Cazeau v. TPUSA, Inc.*, No. 2:18-cv-00321-RJS-CMR, 2021 U.S. Dist. LEXIS 83588, at *18 (D. Utah Apr. 29, 2021).

[22] *See* Dkt. 82 at 3 (quoting *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993)).

[23] *See, e.g.*, *Cazeau*, 2021 U.S. Dist. LEXIS 83588, at *18–22.

[24] Dkt. 86 at 1.  The total settlement value is $2.03 million, which is comprised of a $230,000 common fund and approximately $1.8 million in debt relief.  *Id.*; *See* Dkt. 80 at 4.

[25] Dkt. 82 at 3–11.

[26] *Id.* at 5.

[27] *Id.* at 4–5.

Next, regarding the complexity and novelty of the issues, Lawrence articulates the

following issues that were presented in this case: whether Utah Code § 12-1-1's registration and

bonding requirements apply to "passive" debt buyers; "whether the filing of collection lawsuits

against Utah consumers in the name of an unregistered passive debt buyer is collection activity

for which registration is required; whether conducting such activity without registration violates

the Utah Consumer Sales Practices Act (UCSPA); whether conducting unregistered collection

violates the Fair Debt Collection Practices Act (FDCPA);" application of res judicata to USCPA

claims; and the availability of class-wide relief to a UCSPA class in federal court.[28]  Lawrence

cites to five cases where courts have reached differing results on several of these issues,[29] and

four currently pending appeals considering all or some of the identified issues.[30]  A review of the

cited authorities, as well as the court's own experience in this case, demonstrates the issues were

indeed novel and complex.  Accordingly, this factor weighs in favor of the requested award.

On the requisite skills factor, Lawrence asserts "class actions tend to involve a

specialized area of the law which is often complex and difficult, and where some degree of extra

skill is needed to litigate the cases properly."[31]  She adds that, given the novelty of the issues,

---

[28] *Id.* at 5–6.

[29] *See generally Haskell v. Wakefield & Assocs.*, 2021 UT App 123, 500 P.3d 950 (holding district court erred in dismissing complaint brought under Utah Code Ann. § 12-1-1 on claim preclusion grounds because prior action had been dismissed without prejudice); *Buhler v. BCG Equities, LLC*, No. 2:19-CV-00814-DAK, 2020 WL 888733 (D. Utah Feb. 24, 2020) (unlicensed debt collection is not a UCSPA violation); *McMurray v. Forsythe Fin., LLC*, No. 1:20-CV-8 TS, 2021 WL 83265 (D. Utah Jan. 11, 2021) (claims regarding unlicensed collection barred by res judicata); *Fell v. Alco Capital, LLC* (State of Utah Third District Court, Case No. 200901991) (unlicensed debt collection not a UCSPA violation); *Meneses v. Salander Enterprises, LLC* (State of Utah Third District Court, Case No. 200901992) (UCAA does not apply to debt buyer).

[30] *See McMurray v. Forsythe Finance, LLC*, No. 1:20-CV-8-TS, 2021 U.S. Dist. LEXIS 5815 (D. Utah Jan. 11, 2021), *appeal docketed*, No. 21-4014 (10th Cir. Feb. 8, 2021); *Fell v. Alco Capital*, *appeal docketed*, No. 20210394 (Utah Ct. App. June 30, 2021); *Meneses v. Salander Enterprises, LLC*, *appeal docketed*, No. 20210720 (Utah Ct. App. Oct. 20, 2021); *Lebaron v. Doctors and Merchants Credit, Inc.*, *appeal docketed*, No. 20210518 (Utah Ct. App. Aug 20, 2021).

[31] Dkt. 82 at 6 (quoting *Cazeau v. TPUSA, Inc.*, No. 218-CV-00321-RJS-CMR, 2021 WL 1688540, at *9 (D. Utah Apr. 29, 2021).

this case involved more skill than a "garden variety" class action.[32]  The court agrees, and finds this factor supports the proposed award.

Lawrence next acknowledges the preclusion of other employment for her counsel "is not a significant factor in . . . this case."[33]  Thus, this factor has a neutral effect on the assessment of the requested fee award.

As to the customary fee in other common fund consumer class actions, Lawrence points to several courts that have allowed much higher percentages, ranging from 22% to 40%.[34] Lawrence states that a relatively smaller percentage was intentionally sought in this case to "ensure a meaningful cash recovery for the 367 class members."[35]  Because much higher percentages have been found reasonable in similar cases, the court is more than satisfied that this factor weighs in favor of approving a 6.4% fee award.

Regarding any prearranged fee, Lawrence informs the court that this case was initially taken on a contingency fee basis, which she asserts is "often considered an important factor."[36] Indeed, courts do consistently find "this type of arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award."[37]  Thus, where the award being sought in this case is equal to 6.4% of the settlement,

---

[32] *Id.*

[33] *Id.* at 7.

[34] *Id.* (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455 (10th Cir. 1988) (reviewing cases that ranged from 22% and 37.3 % when considering the "customary fee" factor); *Bradshaw v. Hilco Receivables, LLC.*, 10-0113-RDB, (D. Md.) (40%); *Veiga, et al., v. Suntrust Bank*, 09-2815-PGW, (D. Md.) (40%); *Baker v. Sunshine Financial Group, LLC.*, 11-02028-PWG (D. Md.) (40%); *Tyeryar v. Main St. Acquisition Corp.*, 11-00250-CCB (D. Md.) (40%); Johnson v. Midland Funding, LLC., 09-2391-ELH, (D. Md.) (39%); *Castillo v. Nagle & Zaller, PC.*, 12-002338-WDQ, (D. Md.) (40%)).

[35] *Id.*

[36] *Id.* at 8.

[37] *Blanco v. Xtreme Drilling & Coil Servs.*, No. 16-cv-00249-PAB-SKC, 2020 U.S. Dist. LEXIS 126155, at *15 (D. Colo. July 17, 2020).

when typical contingency fees in similar cases are often one third of the total economic benefit the class receives,[38] this factor weighs in favor of approving Lawrence's proposed award.

Regarding the amount involved and results obtained, Lawrence notes $1.8 million in debt forgiveness was recovered for the class, in addition to $230,000 in cash placed in the common fund.[39]  Lawrence also contends that, even after the proposed fees, costs, and class representative awards are deducted, the 367 class members will be entitled to cash payments of roughly $200, in addition to the forgiven debt.[40]  This is a positive outcome for the class members on the whole.  Therefore, this factor weighs in favor of the proposed fee amount.

Regarding the experience, reputation, and abilities of the three class counsel, Lawrence avers Mr. Borison has over thirty years of practice and a track record of receiving 40% fee awards in common fund class actions, and "Mr. Baczynski and Mr. Ayres have significant experience with the Utah Consumer Sales Practices Act."[41]  Based on these representations, this factor favors the proposed fee award for class counsel.

Lawrence next contends that the undesirability factor, "while not particularly heavy, weighs in favor of the fee request" because "there are few attorneys who would be willing" to take on a debtors' class action case on a contingency basis.[42]  Taking this claim at face value, the court finds this factor supports the award, because while this case may not be particularly undesirable, the requested percentage appropriately reflects the slight undesirability.

---

[38] *See, e.g.*, *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783, at *17–20 (D. Colo. Apr. 21, 2015).

[39] Dkt. 82 at 2, 9.

[40] *Id.* at 9.

[41] *Id.*

[42] *Id.* at 10.

Regarding the nature and length of counsel's professional relationship with the client, Lawrence notes this case has been pending for over three years, and class counsel have represented Lawrence for the entirety of this period.[43]  Thus, this factor also favors the requested amount.

As to the last factor, awards in similar cases, Lawrence largely points to the same aforementioned cases exemplifying awards granted in similar class actions, which are typically much higher than 6.4%.[44]  Accordingly, the court agrees that Lawrence's request "comfortably fits within fee arrangements in similar cases,"[45] and this factor weighs heavily in favor of the proposed award here.

On balance, most of the *Johnson* factors weigh strongly in favor of the requested fee award, and the few that do not directly favor it are either not relevant or have a neutral effect on the court's analysis.  Therefore, Lawrence's proposal to award attorneys' fees equal to 6.4% of the class settlement is reasonable, and she is entitled to $130,000 in attorneys' fees.

## II.        Litigation Costs

Lawrence also seeks recovery of $2,808.75 in litigation costs, which are intended to reimburse the filing fee and Lawrence's share of the mediation expenses.[46]  The court finds this request to be both reasonable and consistent with the terms of the Settlement Agreement.[47]  Accordingly, the litigation costs request is awarded.

---

[43] Dkt. 82 at 9.

[44] *Id.* at 11. The court listed several of these cases above as part of its analysis of the customary fee and contingency factors. *See supra* notes 34, 38.

[45] Dkt. 82 at 11.

[46] *Id.*

[47] *See id.*; Dkt. 71-1 ¶¶ 4, 24, 27.

### III.     Administrative Costs

In addition to litigation costs, Lawrence requests reimbursement for $15,070 in "administrative costs."[48]  Although it is unclear from the Motion exactly what expenses these costs are tied to, the Settlement Agreement does provide for the payment of "Settlement Administration Costs and Expenses" out of the common fund, and these expenses are separately defined and explicitly excluded from the definition of "Attorney's Fees."[49]  "[C]osts of litigation," on the other hand, are included within the definition of "Attorney's Fees."[50]  Further, disbursement of funds for Settlement Administration Costs and Expenses is provided for under a separate subparagraph than the subparagraph governing disbursement of Attorney's Fees.[51]  For these reasons, Lawrence is entitled to her request for reimbursement of administrative costs.

### CONCLUSION

For the reasons explained above, Lawrence's Motion for Fees and Costs is GRANTED. Lawrence is entitled to $147,878.75 for reimbursement of reasonable attorneys' fees, litigation costs, and administrative costs.  Consistent with the Motion, as well as the parties' Settlement Agreement, these funds are to be paid from the common fund.[52]

SO ORDERED this 29th day of March, 2022.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[48] Dkt. 82 at 11; Dkt. 86 at 2.

[49] *See* Dkt. 71-1 ¶¶ 4, 22.

[50] *Id.* ¶ 4.

[51] *See id.* ¶ 27(c)(ii)–(iii).

[52] *See* Dkt. 82 at 2, 11; Dkt. 71-1 ¶ 27(c)(ii)–(iii)